DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4398
Facsimile:  (212) 701-5398

*Counsel for Plaintiff the Institute for Justice*

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| **(1) INSTITUTE FOR JUSTICE,** | : |
|  | : |
| Plaintiff, | : |
|  | : |
| **v.** | : |
|  | : |
| **(1) CHARLIE LASTER, Acting Chairperson of the Oklahoma Ethics Commission;** | : |
| **(2) JARRED BREJCHA, Commissioner of the Oklahoma Ethics Commission;** | : **Case No.** 19-cv-00858-F |
| **(3) GREGG ENGLE, Commissioner of the Oklahoma Ethics Commission;** | : |
| **(4) HOLLY JOHNSON, Commissioner of the Oklahoma Ethics Commission;** | : |
| **(5) CATHY STOCKER, Commissioner of the Oklahoma Ethics Commission;** | : |
| **(6) ASHLEY KEMP, Executive Director of the Oklahoma Ethics Commission.** | : |
|  | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### PLAINTIFF THE INSTITUTE FOR JUSTICE'S MOTION FOR A <u>PRELIMINARY INJUNCTION COMBINED WITH BRIEF IN SUPPORT</u>

Plaintiff the Institute for Justice (the "Institute"), pursuant to Federal Rule of Civil

Procedure 65(a), moves the Honorable Court for an order enjoining the Defendants' (or

{2020761;}

their agents') enforcement of Oklahoma Ethics Rule 5 insofar as it restricts persons from providing a state legislative or executive officer or employee with books or other informational materials that exceed Ethics Rule 5's $10 value threshold, in violation of the First and Fourteenth Amendments of the United States Constitution, for which there is no adequate remedy at law.

# TABLE OF CONTENTS

P<small>AGE</small>

INTRODUCTION ........................................................................................... 1

FACTS ........................................................................................................... 4

ARGUMENT ................................................................................................. 9

I.    THE INSTITUTE IS LIKELY TO SUCCEED ON THE MERITS ....................... 9

    A.    The Institute's Claims Raise a Prima Facie Case of a First Amendment
        Free Speech Violation ................................................................. 10

    B.    The Institute's Claims Raise a Prima Facie Case of a First Amendment
        Petition Clause Violation ............................................................ 17

II.   THE INSTITUTE SATISFIES THE OTHER FACTORS FOR A PRELIMINARY
INJUNCTION ................................................................................................ 20

CONCLUSION ............................................................................................. 22

# TABLE OF AUTHORITIES

C<small>ASES</small>

P<small>AGE</small>(S)

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett,*
564 U.S. 721 (2011) ................................................................... 10

*Awad v. Ziriax,*
670 F.3d 1111 (10th Cir. 2012) ........................................... 20, 21

*BEK Constr. Co. v. NLRB¸*
536 U.S. 516 (2002) ................................................................... 17

*Borough of Duryea v. Guarnieri,*
564 U.S. 379 (2011) ......................................................... 3, 17, 19

*Brown v. Ent'mt Merchants Ass'n,*
564 U.S. 786 (2011) .................................................................. 12

*Buckley v. Valeo,*
424 U.S. 1 (1976) ....................................................................... 10

*Cal. Motor Transport Co. v. Trucking Unlimited,*
404 U.S. 508 (1972) ................................................................... 17

*Chandler v. City of Arvada,*
292 F.3d 1236 (10th Cir. 2002) ................................................. 10

*Christian Gospel Church, Inc. v. City & County of San Francisco,*
896 F.2d 1221 (9th Cir. 1990) ................................................... 19

*Citizens United v. Fed. Election Comm'n,*
558 U.S. 310 (2010) ........................................................... *passim*

*E. R.R. Conf. v. Noerr Motor Freight, Inc.,*
365 U.S. 127 (1961) ......................................................... 3, 18, 19

*Elrod v. Burns,*
427 U.S. 347 (1976) ................................................................... 20

*Fed. Election Comm'n v. Wis. Right to Life, Inc.,*
551 U.S. 449 (2007) ................................................................... 10

*Free the Nipple-Fort Collins v. City of Fort Collins*,
    916 F.3d 792 (10th Cir. 2019) ................................................................. 4, 20

*Gerhart v. State*,
    360 P.3d 1194 (Okla. Crim. App. 2015) ................................................. 18

*Hobby Lobby Stores, Inc. v. Sebelius*,
    723 F.3d 1114 (10th Cir. 2013) ............................................................... 9

*Knox v. Serv. Empl. Int'l Union, Local 1000*,
    132 S. Ct. 2277 (2012) ............................................................................ 9

*Meyer v. Grant*,
    486 U.S. 414 (1988) ............................................................................ 9, 10

*Nixon v. Shrink Mo. Gov't PAC*,
    528 U.S. 377 (2000) .............................................................................. 15

*Pac. Frontier v. Pleasant Grove City*,
    414 F.3d 1221 (10th Cir. 2005) ............................................................. 21

*Planned Parenthood Ass'n of Utah v. Herbert*,
    828 F.3d 1245 (10th Cir. 2016) ...................................................... *passim*

*Randall v. Sorrell*,
    548 U.S. 230 (2006) .............................................................................. 15

*Republican Party of N.M. v. King*,
    741 F.3d 1089 (10th Cir. 2013) ........................................................ 8, 10

*Roth v. United States*,
    354 U.S. 476 (1957) ............................................................................... 9

*Thomas v. Collins*,
    323 U.S. 516 (1945) .............................................................................. 17

*United Mine Workers of Am. v. Ill. State Bar Ass'n*,
    389 U.S. 217 (1967) ........................................................................ 17, 18

*United States v. Fin. Comm. to Re-elect the President*
507 F.2d 1194 (D.C. Cir. 1974) ................................................................ 18

*Verlo v. Martinez*,
    820 F.3d 1113 (10th Cir. 2016) ...................................... 3, 4, 9, 19, 20, 21

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ............................................................. 18, 19

*Williams-Yulee v. Fla. Bar*,
    135 S. Ct. 1656 (2015).......................................................................... 2, 16

*Yes on Term Limits, Inc. v. Savage*,
    550 F.3d 1023 (10th Cir. 2002) ......................................................... 10, 11

## STATUTES & RULES

Ariz. Rev. Stat. Ann. § 41-1231 .................................................................. 14

Fed. R. Civ. P. 65(a) ..................................................................................... 1

Ky. Rev. Stat. Ann. § 6.611 ....................................................................... 14

Miss. Code. Ann. § 5-8-3 ........................................................................... 14

N.C. Gen. Stat. Ann. § § 163A-212............................................................ 14

Or. Rev. Stat. Ann. § 244.020 .................................................................... 14

Okla. Ethics R. 5 ................................................................................ *passim*

Okla. Ethics R. 5.2(3) ................................................................................... 7

Okla. Ethics R. 5.2(7) ................................................................................... 7

Okla. Ethics R. 5.2(9) ................................................................................... 7

Okla. Ethics R. 5.3-5.5 ............................................................................... 14

Okla. Ethics R. 5.7 ..................................................................................... 12

Okla. Ethics R. 5.8 .................................................................................. 6, 12

Okla. Ethics R. 5.10 ................................................................................... 12

Okla. Ethics R. 5.11 ................................................................................ 6, 12

Okla. Ethics R. 5.13 ............................................................................... 11, 14

Okla. Ethics R. 5.18 ................................................................................... 12

Okla. Ethics R. 5.21-22 ............................................................................. 14

Tenn. Code Ann. § 3-6-305(b)(2) ........................................................................... 14

Wash. Rev. Code Ann. § 42.52.150 ...................................................................... 14


## OTHER AUTHORITIES

1 Annals of Cong. 766 (1789),
    https://memory.loc.gov/ammem/amlaw/lwaclink.html .............................. 17

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. &
    Proc. § 2948.3 (2013) ........................................................................... 9

Advisory Opinion 2018-01 (2018 OK Ethics 01) .................................. 6, 7, 20

Colo. Const. art. XXIX, § 3 .......................................................................... 14

Okla. Const. art. XXIX, § 5 ............................................................................ 5

U.S. Const. amend. I ............................................................................ *passim*

U.S. Const. amend. XIV ........................................................................ 1, 9

William H. Mellor & Dick M. Carpenter II, *Bottleneckers: Gaming the Government for
Power and Private Profit*,
    https://www.amazon.com/Bottleneckers-Gaming-Government-Private-
    Profit/dp/1594039070 ........................................................................... *passim*

**BRIEF IN SUPPORT**

Plaintiff the Institute for Justice (the "Institute") respectfully submits this brief in support of its motion for issuance of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) to enjoin the Defendants' (or their agents') enforcement of Oklahoma Ethics Rule 5 insofar as it restricts persons from providing a state legislative or executive officer or employee with books or other informational materials that exceed Ethics Rule 5's $10 value threshold. Rule 5 impermissibly violates the Institute's rights to free speech and to petition the government under the First and Fourteenth Amendments to the United States Constitution and should be enjoined to prevent further First Amendment harm to the Institute, for which there is no adequate remedy at law.

## <u>INTRODUCTION</u>

The Institute is a nonprofit organization that would like to distribute a $15 book to Oklahoma government officers and employees to educate them about the risks of special interests co-opting governmental power for private gain. Oklahoma law precludes it from doing so and thereby violates the First Amendment.

Oklahoma Ethics Rule 5 prohibits anyone that qualifies as a "lobbyist"—defined broadly to include persons, other than federal officials, who are compensated in significant part for communicating with government officers or employees—or their "principal" from providing any item worth more than $10 to Oklahoma state officers and employees. One of the Institute's employees is a registered lobbyist in Oklahoma subject to its Ethics Rules, and the employee's act of providing the book to Oklahoma state

officers or employees would in any event itself constitute lobbying activity that would subject the Institute to Oklahoma's Ethics Rules.  As a result, the Institute is prohibited from distributing any book worth more than $10 to government officers and employees as a "lobbyist principal."

In attempting to distribute the book at issue—which is titled *Bottleneckers: Gaming the Government for Power and Private Profit*, and discusses policy issues of broad relevance to the public—to Oklahoma government officers and employees, the Institute is unquestionably engaging in political speech, and the First Amendment subjects restrictions on political speech to strict scrutiny.  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010); *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1665 (2015).  Oklahoma Ethics Rule 5's restrictions as applied to the provision of informational materials costing more than $10 to state government officers and employees are thus subject to strict scrutiny, which they do not satisfy.  Presumably, the purpose of Oklahoma Ethics Rule 5's restrictions on providing items of value to government personnel is to prevent corruption or the appearance of corruption, but a $15 book cannot plausibly corrupt anyone.  Rather, the effect of Oklahoma Ethics Rule 5 as applied to books and other informational materials is simply to restrict a broad spectrum of core political speech from being directed at government officers and employees, for no good reason.  Indeed, *no other jurisdiction in the United States* imposes restrictions as onerous as Oklahoma's on the provision of informational materials to state officers and employees, and most states, as well as the federal government, contain express

exceptions to their gift laws for the provision of informational materials.  Oklahoma Ethics Rule 5 thus cannot stand under the First Amendment's Free Speech Clause as applied to such materials.  At a minimum, these facts "present a prima facie case" of a First Amendment violation, such that a grant of a preliminary injunction is warranted. *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016) (citation omitted).

Moreover, the First Amendment's Petition Clause bars Oklahoma Ethics Rule 5's limits on the distribution of books and other informational materials greater than $10 in value.  The Petition Clause "allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011).  That is precisely what the Institute seeks to do by distributing a book to state government officers and employees, but is prohibited from doing by Ethics Rule 5.  Because the Petition Clause protects the "right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws," *E. R.R. Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139 (1961), and Oklahoma Ethics Rule 5 substantially restricts that right, Ethics Rule 5 is unconstitutional as applied to the provision of informational materials to government officers and employees for this reason as well.

All of the other factors relevant to the issuance of a preliminary injunction are satisfied here.  It is well-settled that the deprivation of First Amendment rights constitutes *per se* "irreparable harm" for purposes of a preliminary injunction.  *Verlo v. Martinez*,

820 F.3d 1113, 1127 (10th Cir. 2016). Moreover, the balance of equities tips decidedly in favor of an injunction. Prohibiting the Institute from distributing a book to state government officers and employees imposes substantial harm to the Institute's right to engage in core political speech and to petition the government, while the government "has no interest in keeping an unconstitutional law on the books." *Free the Nipple-Fort Collins v. City of Fort Collins, Co.*, 916 F.3d 792, 806 (10th Cir. 2019). Moreover, allowing the distribution of informational materials to state government officers and employees (while leaving all other aspects of Oklahoma's Ethics Rules in place, including its disclosure requirements) raises no realistic specter of corruption. Finally, an injunction would not be adverse to the public interest here because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo*, 820 F.3d at 1127 (citation omitted). Accordingly, this Court should issue a preliminary injunction barring the Oklahoma Ethics Commission and its agents from enforcing Oklahoma's gift ban as applied to the provision of informational materials to state government officers and employees.

## FACTS

The Institute for Justice is a nonprofit, public interest law firm dedicated to protecting individuals' constitutional rights through litigation, media relations, and advocacy. The Institute seeks to educate Oklahoma legislative and executive branch officials and employees on means by which special interests use government power to limit competition, innovation, consumer choice, and individual opportunity by donating a

book, *Bottleneckers: Gaming the Government for Power and Private Profit*, to those

persons.  *Bottleneckers* was authored by the Institute for Justice's Co-Founder and

Chairman of the Board, William H. Mellor, and its Director of Strategic Research, Dick

M. Carpenter.  The book provides a history of the harms imposed by licensing laws and

other governmental restrictions in various industries, from alcohol distributors to taxicab

cartels, and points the way toward positive reforms to curb these government abuses.  *See*

https://www.amazon.com/Bottleneckers-Gaming-Government-Private-

Profit/dp/1594039070.  A hardcover copy of *Bottleneckers* currently retails for about $19

on Amazon.com, while the e-book version retails for about $15 on the same site.  Free

hardcover or electronic copies are offered to journalists.

The Institute intends by the gifting of this book to government officials and

employees to encourage them to better consider the effects of government laws and

regulations on consumer prices and choices, entrepreneurship, and individual

opportunity, among other topics, and to consider potential reforms to laws and

regulations to enhance competition, innovation, and respect for the Constitution.  Of

course, vastly more government officers and employees are likely to read the book if the

Institute may donate the book to them free of charge than if they are required to buy it at

the market rate.

To confirm whether the Institute's donation of *Bottleneckers* to Oklahoma

legislative and executive branch officers and employees violates Oklahoma law, the

Institute for Justice requested an advisory opinion from the Oklahoma Ethics

Commission, which is charged with promulgating and enforcing rules relating to the lobbying of state officers and employees. The Commission may issue official advisory opinions interpreting these rules as provided by Article XXIX, Section 5 of the Constitution of the State of Oklahoma. These opinions are binding on the Commission. *Id.*

In Advisory Opinion 2018-01 (2018 OK Ethics 01), the Oklahoma Ethics Commission interpreted the Institute's question to ask whether "an executive or legislative lobbyist [may] give to a state officer or employee a book which the lobbyist principal may purchase at a discounted author rate of approximately $15.00." The Opinion advised that it is a violation of Oklahoma law, specifically Oklahoma Ethics Rule 5, for a lobbyist to gift to a state officer or employee any book whose market rate is greater than $10. The Opinion stated that such a book may, per Ethics Rules 5.8 and 5.11, be given only in recognition of an "infrequently occurring occasion of personal significance," which is a "major life event personally significant to the recipient that does not occur on an annual basis." In the case of infrequently occurring occasions of personal significance, a $100 (rather than $10) limit applies. However, events such as anniversaries, birthdays, or holidays such as Christmas are not considered "infrequently occurring," as they occur "on an annual basis," and therefore do not provide a basis to gift a book worth more than $10. The exception for "infrequently occurring occasion[s] of personal significance" covers only events occurring less than annually like "a marriage, serious illness, birth or adoption of a child, or retirement." According to

guidance from the Ethics Commission's General Counsel, an election victory (in elections occurring every two or more years) would also qualify.  The gift must also be provided both "in recognition" of that event and "contemporaneously with the occasion or at times when such gifts are traditionally given."

Additionally, per Ethics Rules 5.8 and 5.11, any gift of a book (regardless of value) may only be given once per calendar year.  The aggregate value of the gifts also may not exceed $100 in a calendar year, and, aggregated with meals, may not exceed $500 in any calendar year.

In light of the limitations under Oklahoma law as interpreted in 2018 OK Ethics 01, it is effectively impossible for the Institute to distribute a copy of *Bottleneckers* to government officers and employees.  Because one of the Institute's employees is a registered lobbyist in Oklahoma who has lobbied the Oklahoma government regarding civil forfeiture reform and the deregulation of hairbraiding, the Institute is a "person or entity . . . who employs or retains another person for financial or other compensation to conduct executive or legislative lobbying activities on behalf of the lobbyist principal," Ethics Rule 5.2(9), and therefore the Institute is barred by Oklahoma's Ethics Rules from distributing *Bottleneckers* because it costs more than $10.  Moreover, even aside from the Institute's prior lobbying activities in Oklahoma, its provision of a book to Oklahoma government officers and employees would *itself* constitute "executive or legislative

lobbying activities on behalf of the [Institute]," subjecting the Institute to Ethics Rule 5's ban.[1]

The Ethics Commission's Opinion notes that the Institute would be permitted to provide a copy of *Bottleneckers* to a government officer or employee at an "infrequently occurring occasion of personal significance," but for the Institute to distribute copies of the book, such an infrequently occurring occasion would need to arise with respect to *each* individual targeted.  Infrequently occurring occasions by definition may not occur for a very long time, if they occur at all while the individual is employed by the government.  Moreover, the Institute is generally unlikely to be aware of such occasions (such as a government employee's wedding or birth of a child) even if they do occur, which effectively prohibits any form of mass communication by the Institute to individuals in Oklahoma's government.  The Institute may be able to provide a copy of *Bottleneckers* to the small number of state officials that are elected in recognition of election victories that occur less than annually (and are therefore "infrequently

_____

[1] Ethics Rule 5.2(7) defines "legislative lobbying" to mean "any oral or written communication with the Governor or with a member of the Legislature or with an employee of the Governor or the Legislature on behalf of a lobbyist principal with regard to the passage, defeat, formulation, modification, interpretation, amendment, adoption, approval or veto of any legislation, rule, regulation, executive order or any other program, policy or position of state government."  Ethics Rule 5.2(3) contains a similar definition for "executive lobbying."  Because the provision of *Bottleneckers* to government officers of employees is "with regard to" the "adoption" or "amendment" of state government "program[s]," "polic[ies]," or "position[s]" relating to licensing laws and other governmental restrictions, it constitutes legislative and executive lobbying subject to the Ethics Rules' restrictions.

occurring"), but it could not provide a copy of *Bottleneckers* to elected officials at other times (or potentially ever, as officials may not be re-elected), and it may not provide a copy of *Bottleneckers* to non-elected officials at any time pursuant to that exception.

## ARGUMENT

To obtain a preliminary injunction, a party must demonstrate (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm absent the injunction; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Republican Party of N.M. v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013). In the First Amendment context, "'the likelihood of success on the merits will often be the determinative factor' because of the seminal importance of the interests at stake." *Verlo*, 820 F.3d at 1126 (quoting *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013)). In this case, all of the preliminary injunction factors favor granting an injunction.

## I.    THE INSTITUTE IS LIKELY TO SUCCEED ON THE MERITS

To demonstrate a likelihood of success on the merits, a plaintiff "must present a prima facie case but need not show a certainty of winning." *Planned Parenthood*, 828 F.3d at 1252 (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.3, at 201 (2013)). The Institute's claims satisfy that requirement here.

**A.      The Institute's Claims Raise a Prima Facie Case of a First Amendment Free Speech Violation**

The U.S. Constitution's First Amendment mandates that "Congress shall make no law . . . abridging the freedom of speech," U.S. Const. amend. I.[2]  The First Amendment's purpose is to "create[] 'an open marketplace' in which differing ideas about political, economic, and social issues can compete freely for public acceptance without improper government interference." *Planned Parenthood*, 828 F.3d at 1259 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2288 (2012)); *see also Meyer*, 486 U.S. at 421 (stating the First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people" (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957))).

In particular, a "major purpose of the First Amendment was to protect the free discussion of governmental affairs." *Republican Party*, 741 F.3d at 1092 (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011)). Accordingly, First Amendment protection is "at its zenith" with respect to "core political speech." *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008) (quoting *Chandler v. City of Arvada*, 292 F.3d 1236, 1241 (10th Cir. 2002)),[3] and laws

---

[2] The Fourteenth Amendment makes the First Amendment applicable to the States. *E.g.*, *Meyer v. Grant*, 486 U.S. 414, 420 (1988).

[3] *See also Meyer*, 486 U.S. at 428 (holding legislative restrictions on "the discussion of political policy generally or advocacy of the passage or defeat of legislation" are "wholly at odds with the guarantees of the First Amendment" (quoting *Buckley v. Valeo*, 424 U.S. 1, 48, 50 (1976)).

that "burden political speech are 'subject to strict scrutiny,'" *Citizens United*, 558 U.S. at 340 (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 464 (2007) (opinion of Roberts, C.J.)).  "[P]olitical speech must prevail against laws that would suppress it, whether by design or inadvertence." *Id.*

Here, the Institute seeks to distribute to legislative and executive officers and employees a book regarding the means by which special interests may co-opt the political process and the public policies that could be used to reduce special interests' improper influence on politics, with the purpose of informing and educating those officers and employees regarding this important public policy topic.  That is unquestionably "political speech," and therefore strict scrutiny applies.  *Id.*; *see also Meyer*, 486 U.S. at 428; *Yes on Term Limits*, 550 F.3d at 1028.

To survive strict scrutiny, "Oklahoma has the burden of proving that its ban . . . is narrowly tailored to serve a compelling state interest." *Yes on Term Limits*, 550 F.3d at 1028.  Oklahoma Ethics Rule 5's restrictions on the provision of speech such as *Bottleneckers*—which is intended to inform government officers and employees regarding issues of public concern—fail strict scrutiny.  Even assuming that preventing corruption or the appearance of it constitutes a compelling state interest, Oklahoma Ethics Rule 5 is not narrowly tailored to serve that interest as applied to the Institute's provision of informational materials.

The practical effect of Ethics Rule 5 is that the Institute is precluded from distributing *Bottleneckers*, as well as any other books, reports, documentaries, or other

informational materials "with a fair market value . . . exceeding Ten Dollars ($10.00) to any state officer or employee."  Ethics Rule 5.13.  Ethics Rule 5 is thus not narrowly tailored because it is plain that the donation of a book worth approximately $15 whose sole purpose and effect is to educate readers about political topics does not come close to raising any concern of governmental corruption or the appearance of corruption.  Indeed, the distribution of *Bottleneckers* is intended to help *reduce* the risks of government corruption by educating government officers and employees on the various means, such as licensing laws and other governmental restrictions, by which special interests can co-opt the political process to benefit themselves at the expense of the broader citizenry.  To ban the distribution of *Bottleneckers* in the name of preventing corruption would stand the First Amendment on its head.

Indeed, Oklahoma's Ethics Rules implicitly recognize that the provision of a $15 book does not raise any corruption concern justifying a ban under the First Amendment. For example, Ethics Rules 5.7 and 5.10 permit spending up to $500 per year on meals for government officers and employees, far more than the value of the $15 book the Institute seeks to distribute.  Ethics Rules 5.8 and 5.11 permit the giving of anything of value up to $100 each year to government officers and employees "in recognition of infrequently occurring occasions of personal significance," including election victories and weddings. And Ethics Rule 5.18 includes no value limit at all on the purchase of tickets for state officers or employees to attend charity galas.  If Oklahoma's Ethics Rules do not consider that providing a government officer $100 as a wedding gift, $500 in upscale dinners, and

thousands of dollars in tickets to charity galas raise a meaningful corruption concern, there is no reason why the general distribution of a $15 book should raise such a concern either.  Oklahoma Ethics Rule 5 is thus "seriously overinclusive" in banning the donation of a $15 book while permitting other, substantially more valuable non-speech gifts.  *See Brown v. Ent'mt Merchants Ass'n*, 564 U.S. 786, 805 (2011) (holding that, even where the government asserts legitimate ends, "when they affect First Amendment rights they must be pursued by means that are neither seriously underinclusive nor seriously overinclusive").

In addition to being seriously overinclusive, Oklahoma Ethics Rule 5 is "seriously underinclusive" as well.  *Id.*  According to the Oklahoma Ethics Commission's General Counsel, Ethics Rule 5 permits providing the very book at issue here to an elected official following an election victory.  But whatever concerns the provision of a $15 book to a government official may raise (and the Institute is aware of none), those concerns are no different if the book is provided to an elected official immediately after an election victory (which is permitted), to an unelected official at that same time (which is prohibited), or to an elected or unelected official at a different time (also prohibited).  A law containing such irrational distinctions is not narrowly tailored to serve a compelling state interest.

Moreover, far from serving any interest in preventing government corruption, Oklahoma Ethics Rule 5's application to informational materials has the effect of *exacerbating* the risks of corruption that it is intended to prevent.  Oklahoma Ethics Rule

5 does nothing to prevent special interests with personal access to state government officials from communicating their views to those officials through in-person or other direct lines of communication. But Oklahoma's Ethics Rule 5 makes it very difficult, if not impossible, for organizations that *lack* such personal connections to state officials to communicate their views to government officers and employees, as the Rule substantially limits these organizations' ability to distribute any form of literature or information on political topics to anyone working in government. Oklahoma Ethics Rule 5's application to informational materials is thus not only a substantial barrier to the exercise of the Institute's and others' core First Amendment rights, it also undermines the very interests of broad and equal participation in the political process that Oklahoma Ethics Rule 5 is designed to serve.

Moreover, Oklahoma Ethics Rule 5 could easily have been drafted differently to avoid the First Amendment concerns raised by its ban on gifts of informational materials valued at greater than $10. Oklahoma law more greatly restricts the gifting of informational or educational material to legislative and executive officers and employees than the law of any other state. Indeed, a majority of states, as well as numerous federal departments and agencies, have included exceptions to their gift laws for the provision of books and other informational materials.[4] That other states and the federal government

---

[4] *See, e.g.*, Ariz. Rev. Stat. Ann. § 41-1231 (broadly prohibiting gifts of value but excepting from the definition of gifts "[i]nformational material such as books, reports, pamphlets, calendars or periodicals"); Colo. Const. art. XXIX, § 3 (prohibiting gifts of
(…continued)

have been able to regulate gifts to government officials without imposing similarly onerous restrictions on First Amendment rights is powerful evidence that Oklahoma Ethics Rule 5 is not narrowly tailored.

Furthermore, Oklahoma's Ethics Rules themselves already require registration of lobbyists and their principals, *see* Ethics Rules 5.3-5.5, as well as the disclosure of gifts permitted by the Ethics Rules, *see, e.g.*, Ethics Rule 5.13 (permitting, but requiring reporting of, gifts of trophies, plaques or similar items worth up to $200); Ethics Rules 5.21-22 (generally requiring reporting of gifts).  The Institute does not challenge those disclosure requirements here.  Thus, to the extent any theoretical risk of corruption existed from the provision of a $15 book to a government officer or employee (and it does not), that risk would be amply addressed by Oklahoma's gift reporting requirements in any event.  *See Citizens United*, 558 U.S. at 369 ("[D]isclosure is a less restrictive alternative to more comprehensive regulations of speech.").

---

(continued…)

more than $50 in a calendar year but expressly providing an exception for "unsolicited informational material, publications or subscriptions related to the recipient's performance of official duties"); Ky. Rev. Stat. Ann. § 6.611 (broadly prohibiting "anything of value" but expressly providing that does not include "[e]ducational items" or "[i]nformational items"); Miss. Code Ann. § 5-8-3 (substantially similar); N.C. Gen. Stat. Ann. § 163A-212 (permitting gifting of "informational materials relevant to the duties of the covered person or legislative employee"); Or. Rev. Stat. Ann. § 244.020 (substantially similar); Tenn. Code Ann. § 3-6-305(b)(2) (providing exceptions to gift prohibitions for "informational materials in the form of books, articles, periodicals, other written materials, audiotapes, videotapes, or other forms of communication"); Wash. Rev. Code Ann. § 42.52.150 (exempting from gift prohibitions "[i]nformational material, publications, or subscriptions related to the recipient's performance of official duties").

The outcome here follows *a fortiori* from the Supreme Court's decision in *Randall v. Sorrell*, 548 U.S. 230 (2006).  In *Randall*, the Supreme Court struck down Vermont's election contribution limits of $200 to $400 per person and per election candidate as unconstitutionally low.  *See id.* at 257, 262 (plurality opinion).[5]  The First Amendment concerns raised by Oklahoma Ethics Rule 5's application to informational materials are greater than those at issue in *Randall* in several respects.  First, Oklahoma Ethics Rule 5's monetary restriction is far more onerous than the provision struck down in *Randall*.  Ethics Rule 5 prohibits donations to government officers or employees of any item worth more than only *$10*, which is 20 to 40 times smaller than the $200 to $400 limits found unconstitutional in *Randall*.  Second, *Randall* involved a challenge to limitations on associating with candidates for elected office by providing cash donations, which limitations the Supreme Court has held are subject to a more lenient standard of review.  *See Williams-Yulee*, 135 S. Ct. at 1665 (explaining that a claim that campaign contribution limits violate a contributor's "freedom of political association" is subject to a "more permissive standard" than a claim of a violation of "the right to free speech" regarding "public issues," which is subject to strict scrutiny).  The Supreme Court has never applied that reduced standard of review to direct restrictions on political

---

[5] *See also id.* at 264 (Kennedy, J., concurring in the judgment) ("Vermont's contributions, as the plurality's detailed analysis indicates, are even more stifling than the" limits in *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377 (2000), that "d[id] not come even close to passing any serious scrutiny"); *id.* at 270 (Thomas, J., concurring in the judgment) ("[I]t is almost impossible to imagine that any legislator would ever find his scruples overcome by a $201 donation.").

communications, such as the restrictions on the provision of informational materials to government officers and employees at issue here. To the contrary, it is well-established that direct restrictions on political speech are subject to strict scrutiny. *See Citizens United*, 558 U.S. at 340 (holding burdens on "political speech," whether "by design or inadvertence," are subject to strict scrutiny). Third, whatever concerns may exist that cash contributions to government officials may corrupt the political process (and the Supreme Court found such concerns insufficient to uphold the low contribution limits at issue in *Randall*), the mere provision of a book about public policy does not raise any of those concerns. If a $400 cash donation does not pose a sufficient risk of corruption, a $15 book *a fortiori* does not either. Fourth, as discussed above, Oklahoma's Ethics Rules are riddled with exceptions for *non-speech* gifts (such as meals or trophies) of far greater value than the book that the Institute seeks to distribute to government officers and employees, which further undermines any possible anticorruption justification for restricting the Institute's speech here.

Accordingly, the Institute's claims raise at least a "prima facie case" of a First Amendment free speech violation, and the Institute's request for a preliminary injunction should be granted. *Planned Parenthood*, 828 F.3d at 1252 (citation omitted).

## B. The Institute's Claims Raise a Prima Facie Case of a First Amendment Petition Clause Violation

The U.S. Constitution's First Amendment also provides that "Congress shall make no law respecting . . . the right of the people . . . to petition the Government for a redress

of grievances." U.S. Const. amend. I. The First Amendment's rights to free speech and to petition the government are "cognate rights," *Thomas v. Collins*, 323 U.S. 516, 530 (1945), and both are "integral to the democratic process, although not necessarily in the same way," *Borough of Duryea*, 564 U.S. at 388; *see also Thomas*, 323 U.S. at 530 (noting the free speech and petition rights, "though not identical, are inseparable"). The Supreme Court has recognized the First Amendment right to petition as "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *BEK Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (quoting *United Mine Workers of Am. v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967)).

The right to petition "allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives," *Borough of Duryea*, 564 U.S. at 388, including through "attempts to influence the Legislative Branch for the passage of laws or the Executive Branch for their enforcement," *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *see also* 1 Annals of Cong. 766 (1789) (James Madison stating, in the congressional debate concerning the passage of the First Amendment, that it protects the people's right to "communicate their will" both "publicly" and "privately" to "their representatives"), *available at* https://memory.loc.gov/ammem/amlaw/lwaclink.html. Thus, although some may consider "lobbying" to be "a pejorative term, [] another name for it is petitioning for the redress of grievances." *United States v. Fin. Comm. to Re-elect the President*, 507 F.2d 1194, 1201 (D.C. Cir. 1974). Indeed, "the whole concept of representation depends upon

the ability of the people to make their wishes known to their representatives." *Noerr*, 365 U.S. at 137.  Given the right to petition's importance, the Supreme Court has "repeatedly held that laws which actually affect the exercise of [that right] cannot be sustained merely because they were enacted for the purpose of dealing with some evil within the State's legislative competence, or even because the laws do in fact provide a helpful means of dealing with such an evil." *United Mine Workers*, 389 U.S. at 222.

For example, in *Gerhart v. State*, the Oklahoma Criminal Court of Appeals held that the Petition Clause protected a defendant from criminal liability for sending an email to a State Senator threatening to investigate the Senator's and his family's past if a bill did not receive a hearing and pass out of committee.  360 P.3d 1194, 1198-99 (Okla. Crim. App. 2015).  The Court upheld the defendant's right to send the email notwithstanding its potentially coercive nature because "the Constitution protects the right of the political irritant to contact his elected representative and voice his concerns as much as it protects any citizen's right to do so." *Id.*; *see also White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) (holding plaintiffs exercised their First Amendment right to petition the government "by attending and speaking out at Zoning Adjustment Board hearings," even if they "advocate[d] an unlawful act").

This is an easier case than *Gerhart* and *White*.  Here, the Institute does not seek to send government officials communications that could be construed as blackmail or as advocating lawlessness.  The Institute simply seeks to express its "ideas, hopes, and concerns" regarding public policy and government reforms to Oklahoma government

officials, *Borough of Duryea*, 564 U.S. at 388, in the form of a book co-authored by the Institute's co-founder and its director of research.  The Institute is thus merely seeking to do "what citizens should be encouraged to do, taking an active role in the decisions of government."  *White*, 227 F.3d at 1227 (quoting *Christian Gospel Church, Inc. v. City & County of San Francisco*, 896 F.2d 1221, 1226 (9th Cir. 1990)); *see also Noerr*, 365 U.S. 139 (affirming the "right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws").  Such conduct is unquestionably protected by the First Amendment right to petition.  *See Fin. Comm. to Re-elect the President*, 507 F.2d at 1201 (holding "lobbying" constitutes "petitioning for the redress of grievances" protected by the Petition Clause).  And Oklahoma Ethics Rule 5 unconstitutionally prohibits the Institute from engaging in such petitioning activity merely because the book the Institute seeks to distribute costs a few dollars more than Oklahoma's $10 limit.  The Institute's claims thus raise at least a "prima facie case" that Oklahoma Ethics Rule 5 violates the Institute's First Amendment right to petition the government.  *Planned Parenthood*, 828 F.3d at 1252 (citation omitted).

## II.    THE INSTITUTE SATISFIES THE OTHER FACTORS FOR A PRELIMINARY INJUNCTION

The Institute also satisfies each of the other factors relevant to the issuance of a preliminary injunction.  *First*, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Verlo*, 820 F.3d at 1127 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *see Free the*

*Nipple*, 916 F.3d at 805 (holding that "[a]ny deprivation of any constitutional right" constitutes irreparable injury).  Here, it cannot be disputed that the Institute's efforts to distribute a book to government officers and employees "constitutes First Amendment activity."  *Verlo*, 820 F.3d at 1127.  And the Oklahoma Ethics Commission has issued an opinion that the Oklahoma Ethics Rules bar the Institute from engaging in that protected activity.  2018 OK Ethics 1.  Accordingly, the ongoing deprivation of the Institute's rights to free speech and to petition the government constitute irreparable injury.

*Second*, the balance of equities tips in the Institute's favor.  Speech, and political speech in particular, is an "essential mechanism of democracy."  *Citizens United*, 558 U.S. at 339.  But the Oklahoma Ethics Rules, as authoritatively interpreted by the Oklahoma Ethics Commission, "substantially impair [the Institute's] ability to convey [its] intended message to [its] target audience," *i.e.*, state government officers and employees.  *Verlo*, 820 F.3d at 1127.  Moreover, it is unfathomable that the distribution of a book worth about $15 could give the Institute some sort of corrupt influence over any government official.  To the contrary, the Institute seeks to *combat* such corruption through the distribution of *Bottleneckers* by informing and educating government officials about the ways in which special interests corrupt politics.  And allowing the Institute to distribute the book would impose no cognizable harm on the State because the government "has no interest in keeping an unconstitutional law on the books." *Free the Nipple*, 916 F.3d at 806.  Thus, the balance of equities tips decidedly in favor of an injunction.  *See Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("Delayed

implementation of a [governmental] measure that does not appear to address any immediate problem will generally not cause material harm, even if the measure were eventually found to be constitutional and enforceable.").

*Finally*, the last factor is "whether the preliminary injunction would not be adverse to the public interest." *Id.* It is axiomatic that an injunction would not be adverse to the public interest here because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo*, 820 F.3d at 1127 (quoting *Awad*, 670 F.3d at 1132); *see also Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005) ("Vindicating First Amendment freedoms is clearly in the public interest.").

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant a preliminary injunction to enjoin the Defendants or their agents from enforcing Oklahoma Ethics Rule 5 insofar as it restricts the provision of informational materials to executive or legislative officers or employees pending a final decision on the merits in this litigation or until constitutionally adequate provisions are in place.[6]

---

[6] Plaintiff requests a hearing on this Motion for Preliminary Injunction and has submitted a proposed order for setting that hearing date.

Dated:        Tulsa, Oklahoma
              September 16, 2019

Respectfully submitted,

**GABLEGOTWALS**

By:    */s/ Adam C. Doverspike*  _____

Adam C. Doverspike
100 West 5th Street
Tulsa, OK 74103-4217
Telephone: (918) 595-4800
Facsimile: (918) 595-4990
*adoverspike@gablelaw.com*

**DAVID POLK & WARDWELL LLP**

Arthur J. Burke (*pro hac vice* pending)
Adam G. Mehes (*pro hac vice* pending)
Timothy E.D. Horley (*pro hac vice*
pending)
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4398
Facsimile:  (212) 701-5398
*arthur.burke@davispolk.com*
*adam.mehes@davispolk.com*
*timothy.horley@davispolk.com*

*Counsel for Plaintiff the Institute for
Justice*