## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| INSTITUTE FOR JUSTICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-858-D |
| | ) | |
| CHARLIE LASTER, Acting Chairman of | ) | |
| the Oklahoma Ethics Commission; | ) | |
| JARRED BREJCHA, Commissioner of | ) | |
| the Oklahoma Ethics Commission; | ) | |
| GREGG ENGLE, Commissioner of | ) | |
| the Oklahoma Ethics Commission; | ) | |
| HOLLY JOHNSON, Commissioner of | ) | |
| the Oklahoma Ethics Commission; | ) | |
| CATHY STOCKER, Commissioner of | ) | |
| the Oklahoma Ethics Commission; | ) | |
| ASHLEY KEMP, Executive Director of | ) | |
| the Oklahoma Ethics Commission, | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION COMBINED WITH BRIEF IN SUPPORT

---

Stephanie N. Black, OBA No. 32975
Oklahoma Ethics Commission
2300 N. Lincoln Blvd., Room G-27
Oklahoma City, OK 73105
Phone: (405) 522-2514
Facsimile: (405) 521-4905
stephanie.black@ethics.ok.gov

October 9, 2019

Attorney for Defendants

## Table of Contents

INTRODUCTION…………………………………………………………………1

STATEMENT OF FACTS ……………………………………………………… 3

STANDARD OF REVIEW……………………………………...……...………...…5

ARGUMENTS AND AUTHORITIES……………………………...…….…...6

I.    INSTITUTE'S MOTION FOR PRELIMINARY INJUNCTION SHOULD BE
      DENIED BECAUSE INSTITUTE DOES NOT MEET ANY OF THE
      REQUIRED FACTORS FOR A PRELIMINARY
      INJUNCTION…………………………………………………...…………6

A.    THERE IS NO SUBSTANTIAL LIKELIHOOD INSTITUTE WILL
      PREVAIL ON THE MERITS OF ITS CLAIMS.............................................7

   1.   There Is No Substantial Likelihood Institute Will Prevail On the Merits of
        Its Claims Because Institute Does Not Have Standing to Bring Its
        Claims……………………………………………………………..7

   2.   There Is No Substantial Likelihood Institute Will Prevail On the Merits of
        Its Free Speech Claim……………………………………………...10

   3.   There is No Substantial Likelihood Institute Will Prevail On the Merits of
        Its Petition Claim……………………………………………...16

B.    INSTITUTE WILL NOT SUFFER IRREPARABLE INJURY IF
      PRELIMINARY INJUNCTIVE RELIEF IS NOT GRANTED BECAUSE IT
      IS NOT PROHIBITED FROM PUTTING ITS BOOK IN THE HANDS OF
      STATE OFFICERS AND EMPLOYEES OR PROVIDING INFORMATION
      TO STATE OFFICERS AND EMPLOYEES…………………………..18

C.    THE BALANCE OF EQUITIES DOES NOT WEIGH IN INSTITUTE'S
      FAVOR…………………………………………………………………19

D.    A PRELIMINARY INJUNCTION IS AGAINST THE PUBLIC'S INTEREST
      BECAUSE IT WILL ALLOW LOBBYISTS TO GIVE EXPENSIVE GIFTS,
      INCLUDING TO INDIVIDUAL STATE OFFICERS AND
      EMPLOYEES……………………………………………………21

CONCLUSION…………………………………………...………………………22

## TABLE OF AUTHORITIES

<u>Cases</u>

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721 (2011)…10

*BEK Constr. Co. v. N.L.R.B,* 536 U.S. 516, 122 S. Ct. 2390 (2002)…………...……17, 18

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.,* 461 U.S. 731, 743 (1983)………………..18

*Borough of Duryea, Pa. v. Guarnieri,* 564 U.S. 379, 131 S. Ct. 2488 (2011)…………..17

*Buckley v. Valeo*, 424 U.S 936 (1976)……………………………………………………10

*Burroughs v. United States*, 290 U.S. 534 (1934)………………………………………12

*California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508,
    92 S. Ct. 609 (1972)…………………………………………………………………...17

*Citizens United v. Federal Election Comm'n.*, 558 U.S. 310 (2010)…………………..10

*E.R.R. Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523 (1961)………..17

*Federal Election Comm'n. v. Beaumont*, 539 U.S. 146, 123 S. Ct. 2200
    (2003)…………………………………………………………………………….…..11

*Federal Election Comm'n. v. Colorado Republican Campaign Committee*,
    533 U.S. 431, 121 S. Ct. 2351 (2001)………………………………………………...12

*Garrison v. Louisiana,* 379 U.S. 64, 75 (1964)…………………………………………..18

*Gerhart v. State*, 360 P.3d 1194 (Okla. Crim. App. 2015)……………………………..…17

*Institute for Justice v. Hawkins, et al.*, No 5:18-cv-00934-D (W.D. Okla. August 9,
    2019)…………………………………………………………………………..…4, 5

*Lujan v. Defendants of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130 (1992)………………….7

*McDonald v. Smith*, 472 U.S. 479, 484 (1985)…………………………………………18

*New Mexico Depart of Game and Fish v. United States Department
    of the Interior,* 854 F.3d 1236 (10th Cir. 2017)……………………………1, 2, 5, 6, 7

*McConnell v. Federal Election Comm'n*, 540 U.S. 93, 124 S. Ct. 619 (2003).........10, 13

*O'Shea v. Littleton,* 414 U.S. 488, 94 S. Ct. 669 (1974)…………………………………7

*Preston v. Leake,* 660 F.3d 726, 729-730 (4th Cir. 2011)…………….………………11

*See Schickel, et al. v. Dilger*, 925 F.3d 858…………....………………………11, 12, 15

*Schrier v. Univ. of Colo.*, 427 F.3d 1253 (10th Cir. 2005)………………………...1, 5, 6, 7

*Thomas v. Collins*, 323 U.S. 516, 65 S. Ct. 325 (1945)…………………………………17

*United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla.*
    *v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886 (10th Cir. 1989)………………...1

*United States v. Harris,* 347 U.S. 612 (1954)…………………………………………....12

*Vanatta v. Oregon Government Ethics Comm'n,* 222 P.3d 1077 (2009), certiorari denied
    in 560 U.S. 906 (2010)………………………………………………………….8, 9

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7,
    29 S. Ct. 365 (2008)………………………………………………………..1,6

## Constitution, Statutes, and Rules

Ethics Rule 2.39………………………………………………………………16
Ethics Rule 2.43………………………………………………………………16
Ethics Rule 5.6………………………………………………………….………13
Ethics Rule 5.8……………………………………………………9, 13, 14, 20
Ethics Rule 5.11……………………………………………………9, 13, 20

## Other Authorities

2018 OK Ethics 01…………………………………………………………..….3, 4

**DEFENDANTS RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION COMBINED WITH BRIEF IN SUPPORT**

**INTRODUCTION**

The Court must deny the request for preliminary injunction as Plaintiff fails to meet the requirements to support a preliminary injunction. Additionally, the grant of the preliminary injunction provides Plaintiff with all of the relief it requests without a trial on the merits: namely, to place its books in the hands of state officers and employees.

Preliminary injunctions are 'extraordinary remed[ies]' where the movant bears the burden to show clearly and unequivocally the right to a preliminary injunction.[1] "[I]t constitutes drastic relief to be provided with caution…."[2] All of the following four factors must be clearly established by the movant to obtain a preliminary injunction: (1) the movant is substantially likely to prevail on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the balance of equities weigh in the movant's favor; and (4) the injunction is in the public's interest.[3]

Plaintiff, Institute for Justice ("Institute"), is unable to meet its burden to demonstrate any of the four factors required to obtain preliminary injunctive relief, much

---

[1] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

[2] *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989).

[3] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008); *See also New Mexico Dep't. of Game & Fish v. United States Dep't. of the Interior,* 854 F.3d 1236, 1246-47 (10th Cir. 2017), *citing Fish v. Kobach,* 840 F.3d 710, 723-24 (10th Cir. 2016).

less all four as is required.[4]  First, Institute is not likely to prevail on the merits because it neither has standing nor is it able to show the Oklahoma Ethics Commission's ("Commission") Rules limiting gifts from lobbyists are expressive activity within the protections of free speech.  Institute also has failed to show the Rules at issue are not carefully constructed to further an important governmental interest, such as prevention of corruption or the appearance of corruption.

Second, Institute will not suffer irreparable injury because it can put its book in the hands of state officers and employees through alternative means, including utilizing the exception built into the Rules and other provisions in state statutes for making official gifts to the state.  Third, the balance of equities do not weigh in Institute's favor as the Institute will not suffer irreparable harm if the preliminary injunction is not granted, and it has control over establishing the price of its own book, enabling it to offer the book for free or within Oklahoma's gift limits.

Lastly, issuing a preliminary injunction in this case is not in the public's interest because the public has an interest in government officials who are free from corruption and the appearance of corruption.  Specifically, the public has interest in ensuring government officials fulfill their oaths of office and serve the state free from gifts from special interests of unlimited value. Institute's request for an "informational materials" exception is extremely broad and while it may include books and materials related to state duties, it

---

[4] *New Mexico Dep't. of Game & Fish v. United States Dep't. of the Interior,* 854 F.3d at 1245-47 (rejecting the modified test after the Supreme Court's recent decision in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) and concluding that all four factors of preliminary injunction must be met).

easily could extend beyond that to rare books, textbooks, treatises of high value, with no relation to state responsibilities, and would also include access to databases, software, and subscriptions to online informational material. Considering Institute cannot meet each of the four requirements for preliminary injunction, we respectfully request the Court deny the preliminary injunction.

## **STATEMENT OF FACTS**

1. On December 6, 2017, the Commission received an advisory opinion request from Paul Sherman, Senior Attorney for Institute, stating that, as part of its lobbying efforts, Institute wished to provide copies of books and reports its employees had written to Oklahoma legislative and executive branch officials. Institute did not provide a copy of any book or other materials for the Commission to review.[5]

2. At the time of the request, Institute was not a lobbyist principal and had no restrictions on its ability to provide its books or other informational materials to Oklahoma state officers and employees.[6]

3. On April 13, 2018,[7] Commission issued an advisory opinion as to the following general questions, not specific to Institute:

    a. May an executive or legislative lobbyist give to a state officer or employee a book

---

[5] Oklahoma Ethics Commission, Ethics, Laws, Guides and Forms, Advisory Opinions and Staff Memorandum, *AOR 2017-03*: https://www.ok.gov/ethics/documents/AOR-2017-3%20Institute%20For%20Justice%20Request.pdf (2017).
[6] Oklahoma Ethics Commission: The Guardian System, Public Site, *Lobbyist Detail*: https://guardian.ok.gov/PublicSite/SearchPages/LobbyDetail.aspx?OrganizationID=9674 (last visited October 7, 2019).
[7] 2018 OK Ethics 01.

which the lobbyist principal may purchase at a discounted author rate of approximately $15.00?

b. May an executive or legislative lobbyist give to a state officer or employee a report published by the lobbyist principal which is available for free on the lobbyist principal's website or the lobbyist or lobbyist principal may print for $10.00 or less and provide to the official?

4. The Commission answered the first question, saying a book, valued in excess of $10 but no more than $100, could only be given by a lobbyist to a state officer or employee for an infrequently occurring occasion of personal significance. The Commission answered the second question saying a lobbyist could give to a state officer or employee a book or report printed for $10.00 or less.[8]

5. On September 24, 2018, Institute brought an action against the Commission claiming that the Commission's lobbyist gift restrictions violated its First and Fourteenth Amendment rights to free speech and to petition the Government.[9]

6. At the time Institute filed the suit, and for several years prior, Institute did not have a lobbyist and was not subject to the lobbyist rules on providing gifts to state officers and employees.

7. On October 18, 2018, Commission filed its motion to dismiss on the grounds that Institute did not have a lobbyist and had no standing.[10]

---

[8] *Id.*
[9] *Institute for Justice v. Hawkins, et al.,* No 5:18-cv-00934-D (W.D. Okla. August 9, 2019).
[10] *Id.*

8 . On November 5, 2018, Institute registered a lobbyist to lobby on its behalf with the Commission for the remainder of calendar year 2018 and renewed such registration on December 13, 2018 for calendar year 2019, subjecting itself to the Commission's lobbyist gift restrictions.[11]

9 . On August 9, 2019, the lawsuit was dismissed because the Institute was not subject to the Commission's rules at the time the lawsuit was filed.[12]

10. On September 16, 2019, Institute filed this lawsuit against the Commission.

11. The book Institute seeks to gift is a book over which it has the ability to set the value, offering it on Amazon for purchase but free to journalists.[13]

12. Nothing prevents Institute for offering the book free to all state officers and employees, or setting a purchase price of $10 or less.

13. Institute has not attempted to provide the book under the gifting provisions within the Oklahoma statutes.

## **STANDARD OF REVIEW**

In addition to Institute's burden to meet all four of the preliminary injunction elements mentioned previously, the Tenth Circuit disfavors certain types of preliminary injunctions and requires the movant to meet heightened scrutiny before a preliminary injunction may be issued.[14]  Institute's request falls within two of the three disfavored

---

[11] *Supra*, fn. 5.
[12] *Institute for Justice v. Hawkins,* No 5:18-cv-00934-D (W.D. Okla. August 9, 2019).
[13] Plaintiff's Complaint, 4 ¶ 13.
[14] *New Mexico Department of Game & Fish,* 854 F.3d at 1246, n.15; *Schrier,* 427 F.3d at 1258-59.

types: (1) preliminary injunctions that alter the status quo; and (2) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.[15]  Such disfavored injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."[16] To grant a disfavored preliminary injunction, the movant "must make a strong showing with regard to both the likelihood of success on the merits and with regard to the balance of the harms."[17]

As the relief sought by Institute is to prevent the Commission's enforcement of its Ethics Rules so Institute may provide its books to individual state officers and employees in Oklahoma, the grant of a preliminary injunction in this case both altars the status quo and provides Institute all the relief it could recover at the conclusion of a full trial of the merits. Consequently, a higher level of scrutiny is required to be applied to Institute's request.

## ARGUMENTS AND AUTHORITIES

I.    **INSTITUTE'S MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE INSTITUTE DOES NOT MEET ANY OF THE REQUIRED FACTORS FOR A PRELIMINARY INJUNCTION**

As discussed previously, Institute must show it has met each of the four factors in order to obtain preliminary injunctive relief.[18]  Additionally, due to the type of preliminary

---

[15] *Id.*

[16] *Schrier,* 427 F.3d at 1259 (citation omitted).

[17] *Id.* at 1261 (citation omitted).

[18] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. at 20; *New Mexico Dep't. of Game & Fish v. United States Dep't. of the Interior,* 854 F.3d at 1246-47, *citing Fish v. Kobach,* 840 F.3d 710, 723-24 (10th Cir. 2016).

injunction requested a heightened level of scrutiny applies.[19]  A failure to meet a single one of these four factors compels the Court to deny Institute's Motion for a Preliminary Injunction.[20]

## A.  THERE IS NO SUBSTANTIAL LIKELIHOOD INSTITUTE WILL PREVAIL ON THE MERITS OF ITS CLAIMS

### 1.  There is No Substantial Likelihood Institute Will Prevail on the Merits of Its Claims Because Institute Does Not Have Standing to Bring Its Claims

As set forth in Defendant's Motion to Dismiss Combined with Brief in Support, filed in this action on October 9, 2019, and which is incorporated herein by reference, Institute lacks constitutional standing to bring this action challenging gift limits because Institute has failed to establish an injury in fact that is more than conjecture or speculation and that the alleged injury can be redressed by the Court.

To establish Article III standing, a plaintiff must show that: (1) it has suffered an injury in fact that is (a) concrete and particularized,[21] and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested.[22]

Although Institute claims that the Oklahoma Ethics Commission Rules violate its

---

[19] *New Mexico Department of Game & Fish,* 854 F.3d at 1246, n.15; *Schrier,* 427 F.3d at 1258-59.

[20] *New Mexico Dep't. of Game & Fish v. United States Dep't. of the Interior,* 854 F.3d at 1246-47, *citing Fish v. Kobach,* 840 F.3d at 723-24.

[21] In order to be "particularized" the injury must affect the plaintiff in a personal and individual way. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560 n.1, 112 S. Ct. 2130, 2136 n.1 (1992) (citations omitted).

[22] *O'Shea v. Littleton,* 414 U.S. 488, 493-94, 94 S. Ct. 669, 675 (1974).

protected rights by prohibiting it from gifting a book valued at more than $10 to state officers and employees, it has not shown that the act of gifting things of value to state officers or employees is protected activity within the First or Fourteenth Amendments. Consequently, Institute has failed to establish an injury in fact to meet the standing requirements and, ultimately, its burden of showing a likelihood succeeding on the merits to meet the preliminary injunction requirements.

In 2009, near similar arguments were made in *Vanatta v. Oregon Government Ethics Comm'n.,* 222 P.3d 1077 (2009), certiorari denied in 560 U.S. 906 (2010). In *Vanatta*, the Court responded to the plaintiff's argument that gift giving is constitutionally protected expression by concluding the act of giving a gift by a lobbyist only involves non-expressive conduct and is, therefore, outside of the protections afforded expressive conduct. The Court explains:

> Lobbyists may regularly convey political messages to public officials at or near occasions of their gift giving. Lobbyists also may intend their gift giving to communicate political support or goodwill toward the recipient…But something more is required to elevate mere purposive human activity into protected expression.[23]

Further, the plaintiff in *Vanatta* attempted, like Institute, to bring the case within constitutional protections by analogizing giving gifts to legislators as being the same type of activity as providing political contributions to candidates. In rejecting this argument the Court explains:

> Giving a gift to a public official is not inextricably linked with a public official's ability to carry out official functions. Public officials can speak

---

[23] *Vanatta v. Oregon Government Ethics Comm'n,* 222 P.3d 1077, 1084 (2009), certiorari denied in 560 U.S. 906 (2010).

whether or not lobbyists have given them gifts.[24]

***

> Because plaintiffs have not established that the receipt of gift and entertainment restrictions deny a First Amendment right, their contentions regarding the alleged discriminatory application of those restrictions to different classifications of person are unavailing.[25]

Considering this, Institute does not establish that is likely to succeed on the merits because gifting a book is not a constitutionally protected expression.

Moreover, Institute has means in which to provide its book for free to state officers and employees; therefore, no injury exists. For example, 60 O.S. § 383 allows the book to be gifted to the state via the Governor, the House, or the Senate to be distributed to state officers and employees. In addition, numerous state agencies may accept gifts from lobbyists to be distributed to state officers and employees generally under Oklahoma law. Additionally, the infrequently occasion of personal significance exception under the Ethics Rules allows the book to be gifted to individual state officers and employees for special occasions that are infrequent and personal to the recipient.[26] Considering Institute already has the ability to gift its book at the current listed price to state officers and employees, there is no injury in which the Court can remedy.

Plaintiff has failed to establish a protected right upon which to base its claim. Therefore, it has not suffered any injury if it were barred under the Ethics Rules from providing the book to state officers and employees. Further, Institute does not establish an injury that can

---

[24] *Id.* at 1086.
[25] *Id.* 1089.
[26] Ethics Rules 5.8 and 5.11.

be remedied by the Court because it can gift its book to state officers and employees at its current listed price under Oklahoma law.  Institute, therefore, lacks Article III standing and cannot assert its claims. Institute's motion for preliminary injunctive relief must be denied because it has failed to establish there is a likelihood it would prevail on the merits of its claims.

2.    **There Is No Substantial Likelihood Institute Will Prevail On the Merits of Its Free Speech Claim**

Even assuming, arguendo, that prohibitions of a gift by a lobbyist to a state officer or employee *may* fall within some level of protected speech, Institute cannot show it would likely prevail on the merits of a free speech claim to support preliminary injunctive relief. The U.S. Supreme Court distinguishes amongst types of speech and applies different levels of scrutiny, depending on the nature of the speech. While political speech is recognized as the core of the First Amendment and is subject to strict scrutiny, campaign speech[27] is not at the core of the First Amendment and includes such activity as contribution limits, caps on coordinated spending, and disclosure laws.[28]  Courts have upheld these laws by looking at whether the restriction was closely drawn to serve a sufficiently important government interest.[29]

The Sixth and Fourth Circuits have specifically extended such lesser scrutiny to

---

[27] *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,* 564 U.S. 721, 734 (2011).

[28] *Id*.

[29] *Id*. citing to *McConnell v. Federal Election Comm'n.*, 540 U.S 93 (2003), *Buckley v. Valeo*, 424 U.S 936 (1976) and *Citizens United v. Federal Election Comm'n.*, 558 U.S. 310 (2010).

absolute lobbyist gift bans.  The 4th circuit, in *Preston v. Leake*,[30] used the standard of closely drawn scrutiny to address a restriction that defined campaign contributions to include gifts and banned all such contributions. The Court upheld the absolute ban on such contributions—which included gifts—from lobbyists stating:

> The role of a lobbyist is both legitimate and important to legislation and government decisionmaking, but by its very nature, it is prone to corruption and therefore especially susceptible to public suspicion of corruption. *Any payment* made by a lobbyist to a public official, whether a campaign contribution or simply a gift, calls into question the propriety of the relationship, and therefore North Carolina could rationally adjudge that it should ban *all* payments.[31]

The 6th circuit in *Schickel v. Dilger,* [32] applies the closely drawn scrutiny standard to a restriction on a total ban on gifts from lobbyists but expressed hesitancy that the act of providing an item of value even rises to the level of activity of contributions:

> Restrictions on gift giving, like those on contributions, are marginal restrictions that do not in any way hinder lobbyists' or legislators' ability to discuss candidates or issues. *Buckley*, 424 U.S. at 20–21, 96 S.Ct. 612. Indeed, if contribution restrictions "lie closer to the edges than to the core of political expression," *Beaumont*, 539 U.S. at 161, 123 S.Ct. 2200, gifts of value hug the fringe.[33]

Ultimately, Institute asserts the wrong level of scrutiny, where a lower level of scrutiny should instead apply.

Institute fails to show that there is a substantial likelihood that it will prevail on the

---

[30] *Preston v. Leake,* 660 F.3d 726, 729-730 (4th Cir. 2011).

[31] *Id. at* 737.

[32] *See Schickel, et al. v. Dilger*, 925 F.3d 858, 869 (holding that an absolute lobbyist gift ban is constitutional under closely drawn scrutiny because "[r]estrictions on gift giving, like those on contributions, are marginal restrictions that do not in any way hinder lobbyists'…ability to discuss…issues."); *See Preston v. Leake*, 660 F.3d 726, 729-30.

[33]*Schickel, et al. v. Dilger*, 925 F.3d at 869.

merits of a free speech claim because the Commission's gift rules are closely drawn to a sufficiently important government interest—corruption and the appearance of corruption. The Commission's lobbyist gift rules within Ethics Rule 5 apply to all gifts, regardless of content, and serve important government interests, including preventing corruption and the appearance of corruption, both of which have consistently been recognized by the U.S. Supreme Court as significant government interests that withstand closely drawn scrutiny.[34] Specifically, the Court has concluded as such because the perception of corruption, or opportunities for corruption, threaten the public's faith in democracy.[35] Additionally, the Supreme Court has long recognized the inherent power of government to pass laws to preserve the institutions of government from impairment or destruction.[36] This power is a safeguard from the "improper use of money to influence" results.[37] This power of self-protection is vital to the nation.

What the courts that have addressed gift giving by lobbyists seem to recognize is that lobbying is an act of communication that is not required to include giving gifts. Oklahoma law clearly defines lobbyist activities in Rule 5.2 as "oral or written communication" on behalf of a lobbyist principal with an official at the governmental entity being lobbied with regard to state law, policies, interpretations, etc. Giving a thing of value

---

[34] *See Federal Election Comm'n. v. Colorado Republican Campaign Committee*, 533 U.S. 431, 440–41, 121 S. Ct. 2351 2358 (2001); *See also Schickel, et al. v. Dilger*, at 10 (holding that corruption and the prevention of corruption is a sufficiently important government interest for both regulating campaign contributions and lobbyist gift bans).
[35] *Id.*
[36] *Burroughs v. United States*, 290 U.S. 534 (1934);*United States v. Harris,* 347 U.S. 612 (1954).
[37] *Burroughs v. United States*, 290 U.S at 545.

does not meet the definition of either oral or written communications within Oklahoma law. Further, in Rule 5.6, the Commission clearly treats gifts and things of value as separate and distinct activities from lobbying by prohibiting all gifts and things of value given by lobbyists, liaisons, or lobbyist principals unless those gifts are specifically allowed within the Rules. Overall, Oklahoma has established a comprehensive set of regulations that cannot be read piecemeal. These Rules are carefully structured to further lobbying activity without being unnecessarily burdensome or overly inclusive.

Institute complains that lobbyists may provide high dollar meals but not provide a book over $10. However, Institute fails to realize, or fails to state, the Rules require these meals to be attended by the lobbyist and treat meals differently than a non-meal gift.[38] The Rules do not permit a lobbyist to simply pay for a meal for a state officer or employee because without the lobbyist's presence it would be a straight gift and have a more corrupting impact than permitting a meal during lobbying activities.

Institute also takes issue with the Commission's exception that permits gifts for infrequently occurring occasions of personal significance, or stated another way, for major life events significant to the recipient of the gift.[39] The Rules recognize that providing a gift of $100 or less for a major life event will be given infrequently, if at all, and the impact of such a gift is lessened as numerous other gifts are likely being received in recognition of the event.

Institute also attempts to illustrate inconsistencies within the Ethics Rules by stating

---

[38] Ethics Rule 5.6.
[39] Ethics Rules 5.8 and 5.11.

13

lobbyist principals are permitted to give tickets to bona fide community, civic, and charitable events. However, Institute fails to provide appropriate context. Tickets provided under Rule 5.18, are not considered gifts because the lobbyist or lobbyist principal has no control over the thing of value it funded that is provided to a state officer or employee. The exception recognizes the following reality: charitable, civic, or community events often solicit sponsorships to assist with costs of the event or fundraising for the host entity.

It is not unusual that a sponsor, which may include a lobbyist principal, will receive a set amount of tickets for the event as part of the sponsorship. When the lobbyist principal is unable, or does not desire, to use those tickets, it is not uncommon for the sponsor to return the tickets to the host of the event for the host to distribute without input from the lobbyist or lobbyist principal. It makes little sense to include tickets provided in such a situation as gifts because (1) the lobbyist principal is unlikely to know the ultimate recipient; (2) the state officer or employee is unlikely to know the source of the ticket; and (3) imposition of gift limits and reporting in such a situation would be difficult and serve little purpose. However, the instant a lobbyist principal designates which state officers or employees are to be provided the tickets, the exception no longer applies.[40]

Ultimately, the Oklahoma Ethics Rules for lobbyists are carefully structured to both serve important governmental interests and avoid potential areas of corruption without

---

[40] Ethics Rule 5.8: "A lobbyist principal may purchase tickets for or otherwise provide sponsorship for a bona fide community…reception, breakfast, lunch or dinner, attended by state officers and employees who are guests of the sponsoring organization, provided the lobbyist principal may not designate state officers or employees to be guests and provided the purchase is customary for the lobbyist principal…."

encompassing activity that poses little risk of corruption. While a state is not required to show actual corruption[41] as the basis for its restrictions, Oklahoma is able to show numerous instances corruption scandals involving public officials over the years relating to gifts:

- In 1988, in the largest corruption scandal in U.S. history, over 200 people pled guilty and/or went to prison for making or accepting gifts to the County Commissioners of Oklahoma;[42]

- In the 1960's the state judiciary was the subject of corruption scandal when multiple justices of the Supreme Court were taking money for their votes on decisions;[43]

- Former state Auditor and Inspector Jeff McMahan was convicted in 2008 of accepting illegal contributions, trips, and expensive jewelry;[44]

- In 2009, Insurance Commissioner Carroll Fisher pleaded no contest to allegations that he illegally accepted bribes and gifts;[45]

- Former Sen. Mike Morgan was convicted in 2012 of accepting $12,000 in bribes to

---

[41] *Schickel v. Dilger,* at 870 (6th Cir. 2019), citing to *McConnell v. Federal Election Comm'n*, 540 U.S. at 150.

[42] *Toll 230 as book closes on county commissioner scandal,* The Oklahoman, Feb. 3, 1984, *https://oklahoman.com/article/2056279/toll-230-as-book-closes-on-county-commissioner-scandal*.

[43] Berry, William, *Justice for Sale: Shocking Scandal of Oklahoma Supreme Court* (1996).

[44] Swanson, Eric, *Oklahoma Named 11th Most Corrupt State*, The Ada News, July 5, 2014, ahttps://www.theadanews.com/news/local_news/oklahoma-named-th-most-corrupt-state/article_507305a5-7ce5-5fb6-89d6-8fb74ad46744.html.

[45] Clay, Nolan, *Former Insurance Commissioner Carroll Fisher sentenced to 6 months*, The Oklahoman, February 10, 2009, https://newsok.com/article/3344667/former-insurance-commissioner-carroll-fisher- sentenced-to-6-months.

15

influence legislation.[46]

Limits on gifts to individual government officers and employees are even more important in preventing corruption or the appearance of corruption than are limits on campaign contributions. Gifts to individuals provide a personal benefit to the recipient, whereas campaign contributions are provided to a candidate committee to offset the expenses of a campaign or elected state office and are prohibited from being converted to the candidate's personal use.[47]

Considering the nature of the role of hired lobbyists and Oklahoma's history of corruption regarding gifts generally, the lobbyist gift restrictions imposed by the Commission to prevent corruption and the appearance of corruption serve a significant government interest and are carefully structured to achieve that interest. Institute uses the wrong legal standard for gifts from lobbyists because such is held to a lesser standard of scrutiny than strict scrutiny. Therefore, Institute's request for an injunction should be denied because there is no substantial likelihood that it is likely to succeed on the merits of a free speech claim.

3.  **There is No Substantial Likelihood Institute Will Prevail On the Merits of Its Petition Claim**

Assuming, arguendo, Institute had standing to assert a claim for violation of its right to petition the government for redress, Institute cannot show it would likely prevail on the

---

[46] Clay, Nolan, *Prosecutors say former Senate leader should go to prison for 41 to 51 months*, The Oklahoman, June 16, 2016, https://newsok.com/article/5504532/prosecutors-say-former-senate-leader-should-go- to-prison-for-41-to-51-months.
[47] Ethics Rules 2.43 and 2.39.

merits of its right to petition claim to support preliminary injunctive relief.

Institute claims its First Amendment right to petition the government for redress has been violated but fails to supports the claim without relevant facts or law.  The law it does cite is inapplicable to the situation presented involving access to the courts or administrative proceedings, such as the right to petition the court,[48] employment law,[49] and violation of anti-trust laws.[50]  Specifically, in *Gerhart v. State*,[51] the court's reversal of defendant's blackmail conviction for sending a threatening email to a state senator was based on First Amendment freedom of speech and expression rights, not the right to petition the government for redress.  "[T]he right to petition is generally concerned with expression directed to the government seeking redress of a grievance."[52]  As argued previously, giving a gift or thing of value is not expressive activity.

The right to petition the government is also not absolute.  For example, filing a complaint in court is a form of petitioning activity, but "baseless litigation is not immunized by the First Amendment right to petition."[53]  "Similarly, petitions to the President that contain intentional and reckless falsehoods do not enjoy constitutional protection."[54]  Even

---

[48] *Thomas v. Collins,* 323 U.S. 516, 65 S. Ct. 325 (1945).
[49] *Borough of Duryea, Pa. v. Guarni,* 564 U.S. 379, 131 S. Ct. 2488 (2011); *BEK Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 122 S. Ct. 2390 (2002).
[50] *California Motor Transport Co. v. Trucking Unlimited*,[50] 404 U.S. 508, 92 S. Ct. 609 (1972); *See also E.R.R. Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523 (1961) (railroads could not be held liable under antitrust laws for conducting a publicity campaign to foster adoption and retention of laws).
[51] 360 P.3d 1194 (Okla. Crim. App. 2015).
[52] *Borough of Duryea, Pa. v. Guarnieri,* 564 U.S. 379 at 2495.
[53] *McDonald v. Smith*, 472 U.S. 479, 484 (1985), citing to *Bill Johnson's Restaurants, Inc. v. N.L.R.B.,* 461 U.S. 731, 743 (1983).
[54] *Id.*, citing to *Garrison v. Louisiana,* 379 U.S. 64, 75 (1964).

where protections have been recognized, they do not extend to processes that may be corrupting to the process.[55] Further, such protections "do not extend to lobbying ostensibly directed toward influencing governmental action [that] is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor."[56]

Institute is fully capable under the Ethics Rules of expressing its message to the officers and employees of the state of Oklahoma regarding government programs and policies. It cannot be permitted to use protections surrounding the right to petition the government for what is really nothing more than an attempt to gift items of value to state officers and employees to sway their opinion on policy and programs of the state.

**B.     INSTITUTE WILL NOT SUFFER IRREPARABLE INJURY IF PRELIMINARY INJUNCTIVE RELIEF IS NOT GRANTED BECAUSE IT IS NOT PROHIBITED FROM PUTTING ITS BOOKS IN THE HANDS OF STATE OFFICERS AND EMPLOYEES OR PROVIDING INFORMATION TO STATE OFFICERS AND EMPLOYEES**

Institute fails to meet the second requirement of preliminary injunction because there are ample alternatives that Institute may utilize to put its book in the hands of state officers and employees. For members of the legislature and their staffs, Institute may gift its books to the State Senate and the House of Representatives for distribution to desired officers and employees, pursuant to 60 O.S. § 383. For employees of other state agencies, many of those agencies possess authority to accept gifts; Institute could gift its books to the agencies for distribution to the desired employees. The Governor is also authorized to

---

[55] *BEK Const. Co. v. N.L.R.B.*, 536 U.S. at 525.
[56] *Id.*

accept gifts on behalf of state agencies, pursuant to 60 O.S. § 383, and Institute could gift its books to the State for distribution to the desired individuals.   All of these alternative means of gifting Institute's book are to the office rather than the individual holding the office and would stay with the office when the individual officer or employee departs.

In addition, in this particular fact scenario, Institute has the ability to set the price of the book in various formats as it has set the price for hardback version, a Kindle version[57], and made the decision to provide the book free of charge to journalists.  It appears Institute could easily establish the cost of the book at $10 or less, or it may provide it for free to the public at large or all state officers and employees. There are numerous ways that the issues that Institute wishes to convey in the book can, indeed, be conveyed even with the Commission's lobbyist gift restrictions in place.

Because Institute is able to provide its book (and/or information in its book) to state officers and employees through use of the gifts to the state provisions now, or by establishing a price on its own book at $10 or less to provide it within the Oklahoma gift restrictions, it will not suffer irreparable injury if a preliminary injunction is not granted.

## C.    THE BALANCE OF EQUITIES DOES NOT WEIGH IN INSTITUTE'S FAVOR

In order to obtain preliminary injunctive relief, Institute must show the balance of equities in this case weigh in its favor.  This it cannot do because the equities weigh against

---

[57] Although Institute sells a "Kindle edition" of its book on amazon.com for $15, the fair market value of a .pdf version, not in Kindle format, is unknown; if  $10 or less, and if Institute had a lobbyist, such lobbyist would be able to email the .pdf version to a state officer or employee.

Institute where it will not be irreparably harmed if preliminary injunctive relief is not granted because it is not prevented from putting its book in the hands of state officers and employees. Moreover, any limitation on Institute providing its book to state officers and employees is self-imposed.

Institute admits its own employees wrote the book it seeks to provide to Oklahoma state officers and employees.[58] It is Institute who has chosen to sell its books on the internet marketplace at a fair market value exceeding $10 for both its hardcover copy and a Kindle version. It is also Institute that made the decision to provide the book to Journalists free of charge. There is nothing to prevent Institute from providing the book free to everyone or setting the price at $10.

As previously discussed, Oklahoma Ethics Rules do permit Institute to give its book as a gift for a major life event.[59] The $100 gift for infrequently occurring occasions of personal significance cannot be annually occurring events and recognizes there will be infrequent occasions for which it is customary to provide gifts, such as flowers for a funeral, a wedding gift, etc.

Accordingly, the balance of equities do not weigh in favor of Institute because it has other means of providing its book to state officers and employees and any inability to provide its book is self-imposed.

---

[58] Plaintiff's Complaint, p. 3 ¶ 11.
[59] Ethics Rules 5.8 and 5.11.

D.    **A PRELIMINARY INJUNCTION IS AGAINST THE PUBLIC'S INTEREST BECAUSE IT WILL ALLOW LOBBYISTS TO GIVE EXPENSIVE GIFTS TO INDIVIDUAL STATE OFFICERS AND EMPLOYEES**

Institute seeks a preliminary injunction to enjoin Defendants from enforcing Ethics Rule 5 "insofar as it restricts the provision of informational materials to executive or legislative officers or employees pending a final decision on the merits in this litigation."[60] This is not in the public's interest because the public has an interest in government officials that are free from corruption or the appearance of corruption when fulfilling their oaths of office. Specifically, the public has an interest in government officials serving the state free from gifts of unlimited value from those with special interests. Granting a preliminary injunction in the present case would be against the public interest because it would certainly lead to gifts of unlimited value.

Additionally, Institutes suggested exception for "informational materials" is extremely broad.  Such an exception would include things like text books, legal treatises, rare books, databases, software, etc. all of which can be high dollar items and some with a resale value.  It could also include things that have no bearing on state officers or employees duties, but solely relate to further personal or private business interests of that officer or employee. At a certain point, providing something of value to a state officer or employee to persuade how that state officer or employee performs their official duties would not only undermine the public's trust in government, which can only be effectuated through state officers and employees, but it may also run afoul of state bribery laws.

---

[60] Plaintiff's Motion for Preliminary Injunction Combined with Brief in Support, p. 22.

## CONCLUSION

Institute's motion for a disfavored preliminary injunction must be rejected because it alters the status quo and will afford Institute all the relief it seeks in this action–to give its book to individual state officers and employees.  Institute has also failed to show a protected right that is impacted by the Commission's Rules, the act of giving a gift is not protected expressive activity.

Lastly, Institute cannot meet a single one of the four factors required to obtain preliminary injunctive relief: (1) it is not likely to prevail on the merits because it does not have standing and constitutional limits on lobbyists' speech have been upheld to further the important governmental of prevention of corruption and the appearance of corruption; (2) Institute will not suffer irreparable injury because it has alternative means of putting its book in the hands of state officers and employees, including gifting the books to the state rather than to individuals or establishing the price of its own book within the gifting limits; (3) the balance of equities do not weigh in Institute's favor; and (4) the preliminary injunction is not in the public's interest because it would allow lobbyists to give expensive gifts under the guise of "informational materials" that go far beyond the value of the book Institute seeks to provide. Because Institute cannot meet any of the four factors required for preliminary injunctive relief, its motion for a preliminary injunction should be denied.

Respectfully submitted,

s/ Stephanie N. Black

Stephanie N. Black, #32975
OKLAHOMA ETHICS COMMISSION
2300 N. Lincoln Blvd., Room G-27
Oklahoma City, OK 73105
Phone:        405-522-2514
Facsimile:    405-521-4905
stephanie.black@ethics.ok.gov

ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2019, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. Based on the records currently on file, the Court Clerk will transmit a Notice of Electronic Filing to those registered participants of the ECF system.

s/ Stephanie N. Black

_____

Stephanie N. Black