# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) INSTITUTE FOR JUSTICE, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) |
| (1) CHARLIE LASTER, Acting Chairperson of the Oklahoma Ethics Commission; | ) ) ) |
| (2) JARRED BREJCHA, Commissioner of the Oklahoma Ethics Commission; | ) ) ) |
| (3) GREGG ENGLE, Commissioner of the Oklahoma Ethics Commission; | ) ) ) |
| (4) HOLLY JOHNSON, Commissioner of the Oklahoma Ethics Commission; | ) ) ) |
| (5) CATHY STOCKER, Commissioner of the Oklahoma Ethics Commission; | ) ) ) |
| (6) ASHLEY KEMP, Executive Director of the Oklahoma Ethics Commission. | ) ) ) ) |
| *Defendants*. | ) |

Case No. CIV-19-858-D

# O R D E R

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. No. 16]. Plaintiff Institute for Justice ("Institute") has filed a Response in opposition [Doc. No.22]. The time within which Defendants could have filed a reply has lapsed, and no reply has been filed. The matter is at issue.

## BACKGROUND

The Institute is a nonprofit, public interest law firm that engages in public advocacy, litigation, and strategic research. The Institute employs two individuals with principal job duties of lobbying and two lobbyists working under contract. The Institute states in its Complaint [Doc. No. 1] that one of its in-house lobbyists is registered as a lobbyist in

1

Oklahoma, and further that the registered lobbyist has lobbied in Oklahoma during the year prior to filing the instant action.

The Institute's goal is to engage state and federal government officers and employees on issues involving licensing laws, occupational restrictions, and the influence of special interest groups. To achieve this goal, the Institute would like to distribute a book, *Bottleneckers: Gaming the Government for Power and Private Profit*, to officers and employees of the legislative and executive branches of the State of Oklahoma.

The edition of *Bottleneckers* that the Institute seeks to distribute has a retail value of $15.00. The Institute requested an advisory opinion from the Oklahoma Ethics Commission ("OEC") to determine the legality of distributing this book. The OEC interpreted the Institute's questions as:

> May an executive or legislative lobbyist give to a state officer or employee a book which the lobbyist principal may purchase at a discounted author rate of approximately $15?"

Complaint [Doc. No. 1] ¶ 21. The OEC answered that Ethics Rule 5 prohibits gifting a book to a state officer or employee if the market value is greater than $10.00. The Institute claims that this restriction violates its First Amendment rights to freedom of speech and to "petition the government for the redress of grievances, and specifically the right to express [its] ideas, hopes, and concerns to government officers and employees." *Id*. ¶ 39. The Institute requests a declaratory judgment that Ethics Rules 5.6, 5.8, 5.11, and 5.13, as applied to the distribution of informational materials to legislative branch officers and employees: (1) unconstitutionally regulate political speech; and, (2) unconstitutionally regulate petitions to the government. The Institute also seeks a permanent injunction.

## STANDARD OF DECISION

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id*. In reviewing a facial attack, a district court must accept the allegations in the complaint as true. *Id*. In a factual attack, the moving party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id*. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id*. Instead, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*

"Constitutional standing is a threshold jurisdictional question" that "must be satisfied prior to adjudication by Article III courts" of claims brought pursuant to the Federal Declaratory Judgment Act. *Trant v. Oklahoma*, 874 F. Supp. 2d 1294, 1299 (W.D. Okla. 2012), *aff'd, Trant v. Oklahoma*, 754 F.3d 1158 (10th Cir. 2014). "Standing doctrine is designed to determine *who* may institute the asserted claim for relief." *ACORN v. City of Tulsa, Okl.*, 835 F.2d 735, 738 (10th Cir. 1987) (quoting *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986) (emphasis in original)). "Absent a plaintiff with constitutional standing, federal courts lack jurisdiction." *Id*.

## DISCUSSION

Defendants move to dismiss this case on the basis that Plaintiff: (1) lacks standing as it was not a lobbyist or lobbyist principal at the time the Complaint was filed, raising a

factual challenge on a 12(b)(1) motion; and, (2) fails to state a claim for which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6).

In response to Defendants' Motion, Plaintiff concedes that it was not a lobbyist or lobbyist principal at the time the Complaint was filed but asserts that it has since attained that status and contends that it has properly stated a claim for relief. Response at 6.

## I. The Court has jurisdiction over the action, as Plaintiff has established constitutional standing.

The irreducible constitutional minimum of standing contains three elements: (1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest; (2) there must be a causal connection between the injury and the conduct complained-of; and, (3) the injury must be redressable by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (alteration in original) (internal quotation marks and citation omitted).

### A. Injury-in-Fact

The invasion of the complained-of legally-protected interest must be : (1) actual or imminent; (2) concrete; and, (3) particularized. *Lujan*, 504 U.S. at 560; *accord Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016).

#### i. *Actual or Imminent*

Defendants argue that Plaintiff has failed to allege an actual injury. First, they allege this is so because Plaintiff has not established it has a constitutional right to give a gift to state officers; next, because the Ethics Rules do not preclude Plaintiff from gifting its book to state officers and employees.

To establish standing, the party seeking redress must have been actually injured or, in the alternative, must be able to show that they will be imminently injured. *Lujan*, 504 U.S. at 560.

The Tenth Circuit addressed the propriety of testing the merits of a plaintiff's claims for purposes of evaluating standing in *Initiative and Referendum Institute v. Walker*. 450 F.3d 1082 (10th Cir.2006) (en banc), *cert. denied*, 549 U.S. 1245 (2007). The plaintiffs in *Walker* argued that their standing to assert a First Amendment claim derived from their alleged constitutional injury. On a motion to dismiss, the defendants argued the plaintiffs were not injured by the state constitutional provision—and thus lacked standing—because their claim on the merits was incorrect. Specifically, the defendants argued "that the First Amendment does not guarantee political success or imply a right to be heard and supported, and that the supermajority requirement place[d] no direct restriction on the speech of anyone and [left] the [p]laintiffs free to engage in full and robust political speech." *Id*. at 1092.

The Tenth Circuit declined to consider these merits arguments in the context of their standing review, not because the arguments were necessarily incorrect, but because the *Walker* defendants had "confuse[d] standing with the merits." *Id*. "For purposes of standing," the Tenth Circuit noted, "the question cannot be whether the Constitution, properly interpreted, extends protection to the plaintiff's asserted right or interest," because that would be a determination of the merits of the plaintiffs' claim under the guise of an evaluation of their standing. *Id*.

Accordingly, the Court refuses to consider—at this threshold stage of determining standing—whether the Constitution protects Plaintiff's efforts to distribute *Bottleneckers*. That question must be reserved for the merits analysis. *See id*. at 1098–1105.

Nevertheless, the Court notes that "the term 'legally protected interest' must do some work in the standing analysis . . . [and] has independent force and meaning without any need to open the door to merits considerations at the jurisdictional stage." *Id*. at 1093. To be sure, Tenth Circuit precedent mandates the Court assume plaintiff's claims have legal validity. *Day v. Bond*, 500 F.3d 1127, 1137–38 (10th Cir. 2007). But there is still work to be done by the standing requirement, as Supreme Court precedent bars the Court from assuming jurisdiction based upon a hypothetical legal injury. *See Lujan*, 504 U.S. at 560.

In this case, Plaintiff alleges it intended to distribute *Bottleneckers* to government officers and employees. It further alleges this conduct is arguably affected with a constitutional interest, and the Court agrees. The Supreme Court has found standing where state action proscribed similar conduct. For example, the Supreme Court found the claims in *Holder v. Humanitarian Law Project* justiciable because there was standing to sue. 561 U.S. 1 (2010). In *Holder*, the Supreme Court considered a preenforcement challenge to a law that criminalized "knowingly provid[ing] material support or resources to a foreign terrorist organization." *Id*. at 8. The *Holder* plaintiffs claimed they had provided support to groups designated as terrorist organizations prior to the law's enactment and would provide similar support in the future. Likewise, in *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988), the Supreme Court held that booksellers could seek preenforcement

review of a law making it a crime to "knowingly display for commercial purpose" material that is "harmful to juveniles" as defined by the statute. *Id*. at 386. At trial, the booksellers introduced sixteen books they believed were covered by the statute and testified that costly compliance measures would be necessary to avoid prosecution for displaying such books. *Id*; *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (organizations adequately alleged their intent to engage in political speech, as required to establish Article III injury-in-fact).

There is no debate as to whether the conduct at issue is in fact proscribed by the Commission's binding opinion. The opinion was issued in response to Plaintiff's inquiry as to whether it could distribute *Bottleneckers*. It prohibits the gifting, by any lobbyist principal, of any books worth more than $10 to any government officials, other than for an infrequently occurring occasion of personal significance. *See* 2018 OK Ethics 01. Plaintiff seeks to distribute *Bottleneckers* to government officials but cannot without violating the Ethics Rules. Response at 16. Simply put, there is nothing hypothetical, imaginary, or wholly speculative about the alleged injury or Plaintiff's fear of repercussions should they elect to distribute *Bottleneckers* notwithstanding the Commission's opinion.

Plaintiff has, therefore, sufficiently alleged an actual injury arguably implicating a constitutional right.

### ii. Concrete and Particularized

For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("distinct"); *Allen v. Wright*, 468 U.S. 737, 751 (1984) ("personal"). Although particularization is necessary to

establish injury-in-fact, it is not sufficient as the injury alleged must also be concrete. *Spokeo*, 136 S. Ct. at 1548. The concreteness requirement of the standing analysis is meant to convey the usual meaning of the term: "real," as opposed to "abstract." *Id*. It is not, however, synonymous with "tangible." Concreteness is required even in the context of statutory violations. *Id.* at 1549. If the injury is sufficiently concrete and specific, even if it is widely shared, standing can nevertheless be established.

The injury alleged here is clearly unlike the one in *Spokeo, Inc., v. Robinson*, where the plaintiff asserted a bare procedural violation without showing that it was accompanied by a concrete harm. 136 S. Ct. at 1548. Here, the harm alleged is concrete—the obstruction of Plaintiff's ability to distribute *Bottleneckers* to government employees and officers.

This concrete injury is particularized, as it affects Plaintiff in an individual way. That Plaintiff was not a registered lobbyist at the time the opinion was issued is of no moment. *See Lujan*, 504 U.S. 555 (noting that "[w]hile it may seem trivial to require that [plaintiffs] acquire airline tickets to the project sites or announce a date certain upon which they will return," it was nevertheless necessary to establish standing) (Kennedy, J., concurring in part and concurring in the judgment). The Court previously found Plaintiff lacked standing because they were not a registered lobbyist at the time it filed suit. *Inst. for Justice v. Hawkins*, No. CIV-18-934-D, 2019 WL 3769957, at *4 (W.D. Okla. Aug. 9, 2019) (DeGiusti, J.) (dismissing the action without prejudice because "the Institute has failed to provide any authority to support the contention that it was subject to Ethics Rule 5 at the time the Complaint was filed"). Plaintiff has now obtained the proverbial airline ticket required by *Lujan*, as it registered as a lobbyist principal before filing this action's

operative pleading. *See* Response at 21. This cements Plaintiff's stake in vigorously litigating the claims it brings before the Court.

"[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *accord Hawkins*, 2019 WL 3769957, at *4. As a registered lobbyist principal seeking to distribute *Bottleneckers*, Plaintiff here has established it has the requisite stake.

### B. Causal Connection

Defendants further argue that even if an injury-in-fact exists, it was Plaintiff who determined the value of *Bottleneckers* to be in excess of $10.00. And as such, Plaintiff complains of a self-inflicted injury. Motion at 10. Plaintiff refutes this assertion and claims it has no control over *Bottleneckers*' marketed price. Response at 22.

To establish standing, and thereby federal jurisdiction, the alleged injury must be fairly traceable to Defendants' challenged action and not the result of the independent action of some third party. *Lujan*, 504 U.S. at 590.

Without conflating the standing analysis with an analysis of the merits of Plaintiff's claim, the Court finds a causal connection between the injury alleged and Defendants' conduct. *Id*. at 561. Certainly, Defendants are correct that where an injury is self-inflicted, standing cannot be established. *See Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013); *see also Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 n.8 (10th Cir. 2005). But the causal connection here is clear, and unlike ones alleged in *Clapper v. Amnesty International* and *Nova Health Systems v. Gandy*. In those cases, the plaintiffs

incurred certain costs as a reaction to a risk of harm, when the harm itself was not certainly impending. This attenuated the causal connection, rendering it speculative and uncertain. It is only the Commission's opinion here that allegedly precludes the unregulated distribution of *Bottleneckers*. Plaintiff alleges it does not have control over the price of the book, and therefore has no control over whether the regulation applies to its book. Nevertheless, it is axiomatic that standing is not lost simply because the entity suing is nothing more than a "test plaintiff." *See, e.g., Evers v. Dwyer*, 358 U.S. 202, 204 (1958) ("That the appellant may have boarded this particular bus for the purpose of instituting this litigation is not significant.").

The Court finds the alleged injury in this case—Plaintiff's inability to distribute a book worth more than $10 to government officials and employees—to be fairly traceable to Defendants' challenged action—the issuance of the opinion prohibiting such conduct.

### C. Redressability

Finally, to confer standing, it must be likely—as opposed to merely speculative—that the alleged injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 590.

It is far from speculative that an injunction barring the enforcement of Ethics Rule 5 would plainly redress Plaintiff's injury. Because of a decision by the Court in its favor, Plaintiff would be able to distribute *Bottleneckers* to government officers and employees without penalty. *See, e.g., Petrella v. Brownback*, 697 F.3d 1285, 1294 (10th Cir. 2012) (redressability met where an injunction could redress the constitutional violation). This is not a situation where the Court is asked to impose monetary sanctions on Defendants,

resulting in a deterrent effect but incurring no benefit to Plaintiff.  *Cf. Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).

That *Bottleneckers* may reach government officials and employees despite the Commission's ruling does not preclude a finding that Plaintiff has standing to sue. *See Adarand Constructors, Inc., v. Peña*, 515 U.S. 200, 211 (1995) ("The aggrieved party need not allege that he would have obtained the benefit but for the barrier in order to establish standing."); *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 280 (1978) ("[E]ven if Bakke had been unable to prove that he would have been admitted in the absence of the special program, it would not follow that he lacked standing.").  The redressability element of the standing inquiry is met.

Because Plaintiff has sufficiently established the irreducible constitutional minimum of standing, the Court finds it has jurisdiction to entertain Plaintiff's claims on the merits.

## II. Plaintiff has stated a constitutional claim upon which relief can be granted.

Next, Defendants move to dismiss Plaintiff's Complaint by asserting Plaintiff has failed to state a claim, pursuant to FED. R. CIV. P. 12(b)(6).  Defendants argue that gifting is not an activity protected by the First Amendment, as incorporated against the states by the Fourteenth Amendment.  Motion at 13.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Robbins v. Oklahoma*, 519 F.3d

1242, 1247 (10th Cir. 2008). A claim has facial plausibility when the court can draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In support of their assertions, Defendants rely only on the persuasive authority of *Vanatta v. Oregon Government Ethics Commission*, 222 P.3d 1077 (Or. 2009). And although, certainly, in *Vanatta* the Supreme Court of Oregon found that statutes prohibiting public officials from receiving gifts from lobbyists did not restrict expression, that court was not concerned with gifts of the type at issue here. As Plaintiff points out, the Oregon statute at issue in *Vannatta* excepted informational materials from its gift restrictions. *Id.* at 1079 n.5.

Plaintiff's Complaint alleges the distribution of *Bottleneckers*—the gift at issue—is burdened by state action. The alleged gift is a book. The book's content is arguably one of public interest. Bans and limitations on gifts from lobbyists to government officials and employees are routinely analyzed by the appellate courts as First Amendment challenges. *See. e.g., United States v. Ring*, 706 F.3d 460, 466 (D.C. Cir. 2013) ("providing information, commenting on proposed legislation, and other lobbying activities implicate First Amendment speech and petition rights"); *N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999) (restrictions on lobbyists have First Amendment implications). And the Supreme Court has repeatedly held that state-imposed limits on campaign contributions constitute speech protected by the First Amendment. *See Thompson v. Hebdon*, 140 S.Ct. 348 (2019). If gifting money to state officials is a constitutionally-protected activity, the Court declines to find—in the context of a motion

to dismiss—that gifting a book, allegedly containing information of public interest, is not likewise a protected activity.

At this early stage in the litigation, Plaintiff has alleged sufficient facts to state a claim upon which relief can be granted. *See Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489 (D.C. Cir. 1967) ("The First Amendment protects free expression and exchange of ideas regardless of their merit because this is considered imperative to open and robust debate on matters of public interest").

## CONCLUSION

As detailed herein, Plaintiff has adequately established standing so as to confer jurisdiction on the Court over its constitutional claims. Further, the Complaint contains sufficient facts to allege violations of Plaintiff's freedom of speech and petition rights under the First and Fourteenth Amendments of the United States Constitution.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss [Doc. No. 16] is **DENIED**.

**IT IS SO ORDERED** this 7th day of January, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge