## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

INSTITUTE FOR JUSTICE,               )
                                     )
            *Plaintiff*,             )
v.                                   )
                                     )    Case No. CIV-19-858-D
CHARLIE LASTER, Acting               )
Chairperson of the Oklahoma Ethics   )
Commission *et al.*,                 )
                                     )
            *Defendants*.            )

## O R D E R

Before the Court is Plaintiff's Motion for a Preliminary Injunction [Doc. No. 4],

Defendants have filed a Response [Doc. No. 17] in opposition, to which Plaintiff has

replied [Doc. No. 21]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff in this case—the Institute for Justice (the "Institute")—is a nonprofit

organization seeking to distribute a $15 book to officers and employees of the legislative

and executive branches of the State of Oklahoma. A more detailed recitation of the

background facts in this case can be found in the Order [Doc. No. 32] denying Defendants'

Motion to Dismiss and will not be repeated here.

## STANDARD OF DECISION

In matters involving a request for a preliminary injunction, a live hearing is typically

held to allow the parties to present evidence and make arguments. These hearings are

generally required if the facts are in dispute. *See, e.g., Shaw v. AAA Eng'g & Drafting, Inc.,*

213 F.3d 538, 545 (10th Cir. 2000) ("An evidentiary hearing, however, was unnecessary

to resolve these legal issues."); *Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191, 1998 WL 339465, at \*3 (10th Cir. 1998) ("[Plaintiff] has failed to cite any Tenth Circuit authority that requires a district court to hold an evidentiary hearing prior to granting or denying a preliminary injunction motion."); *accord Carbajal v. Warner*, 561 F. App'x 759, 764 (10th Cir. 2014).[1]

If, however, the facts are not in dispute, a ruling can be made based on the parties' paper submissions, as "[Federal Rule of Civil Procedure] 65(a) … does not always require a live hearing." *See Carbajal*, 561 F. App'x at 764; *see also Dexia Credit Local v. Rogan*, 602 F.3d 879, 884 (7th Cir. 2010) (no evidentiary hearing required because there was no factual dispute to resolve).

The purpose of a preliminary injunction is typically to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The Supreme Court has established the following four factors that a movant must show in order to be entitled to a preliminary injunction: "the [movant] must demonstrate (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party's favor; and (4) the preliminary injunction is in the public interest." *Republican Party of N.M. v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When weighing these factors, courts "must balance the competing claims of injury and must consider the effect on each party

---

[1] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987).

Additionally, the Tenth Circuit has found three situations when issuing an injunction is "specifically disfavored" and, thus, require a heightened standard. *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc) (citations omitted). These types of disfavored injunctions include: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *O Centro*, 389 F.3d at 975. Although originally the Tenth Circuit described the heightened standard to bear by a plaintiff as "heav[y] and "compelling[]," it has since modified it, requiring courts to "closely scrutinize[]" whether a party is entitled to a preliminary injunction in these specific instances. *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098–99 (10th Cir. 1991) (applying the original "heavily and compellingly" standard), *overruled by O Centro*, 389 F.3d at 975 (now requiring courts to "closely scrutinize[]" whether to issue a preliminary injunction so as to "assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course").

## DISCUSSION

Plaintiff requests a preliminary injunction in this case to enjoin Defendants from enforcing against it Oklahoma Ethics Rule 5 ("Rule 5"). Plaintiff claims Rule 5 violates its First and Fourteenth Amendment rights in a variety of ways. First, Plaintiff claims that its First Amendment right to free speech is infringed by Rule 5 because the rule restricts its

ability to distribute informational materials to state officers and employees. Second, Plaintiff claims that Rule 5 infringes on its First Amendment right to petition the government because the rule restricts its ability to "express its 'ideas, hopes, and concerns' regarding public policy and government reforms" to state officials. Motion [Doc. No. 4], at 19–20. For these reasons, the Institute believes a preliminary injunction is appropriate to prevent further harm to its First Amendment rights. *Id.* at 1.

In response to Plaintiff's request, Defendants contend that granting a preliminary injunction in this case would both alter the status quo and provide the Institute with "all of the relief it requests without a trial on the merits: namely, to place its books in the hands of state officers and employees." Response [Doc. No. 17], at 1. Defendants assert that the Institute fails to meet its burden of proving all four required elements to obtain a preliminary injunction under the heightened standard required by the context. *Id.*

## I.    An evidentiary hearing is unnecessary in this case because there is no factual dispute to address.

As outlined above, evidentiary hearings prior to issuing a preliminary injunction are generally required if the facts are in dispute.  The Court finds none of the relevant facts are in dispute, however, and the parties' briefs suffice for the Court to rule as to whether an injunction is appropriate. Therefore, Plaintiff's request for an evidentiary hearing is denied.

## II.   Because Plaintiff has satisfied its burden of proving the four required elements, Plaintiff's Motion for a Preliminary Injunction is granted.

The ultimate issue is whether the Plaintiff is entitled to injunctive relief prior to adjudication on the merits. A preliminary injunction is an "extraordinary remedy," and any

right to relief must be "clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In other words, "a preliminary injunction should be granted only in cases where the necessity for it is clearly established." *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir. 1989) (describing a preliminary injunction as "drastic relief to be provided with caution"). As mentioned above, there are situations when a heightened standard is imposed upon the movant to avoid issuing disfavored injunctions. *See O Centro*, 389 F.3d at 975. One of these situations includes when a preliminary injunction would "afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Id.* Another is the situation in which an injunction would "alter the status quo." *Id.*

In this case, the Institute claims Rule 5 infringes on its First Amendment right to free speech, and therefore a preliminary injunction should be issued.

### a. *Plaintiff has a sufficient likelihood of succeeding on the merits.*

To evaluate this factor, the Court must examine the substantive merit of Plaintiff's claim that the First Amendment grants it the right to distribute informational materials to state employees and officials. The Institute correctly notes that, in the context of a First Amendment claim, "'the likelihood of success on the merits will often be the determinative factor' because of the seminal importance of the interests at stake." Motion at 9; *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016) (quoting *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013)).

The Tenth Circuit case of *Verlo v. Martinez* involved the distribution of political pamphlets on public fora and is therefore instructive when considering the facts of this

case. 820 F.3d at 1119. In *Verlo*, the circuit affirmed the district court's granting of a preliminary injunction and emphasized how the injunction landscape changes in the context of a First Amendment claim. *Id.* at 1126–29. While the majority of the analysis under the first prong considered whether the district court's treatment of a courthouse plaza as a public forum was correct, the Tenth Circuit also discussed whether the activity in question was protected by the First Amendment. *Id.* at 1128. Therefore, the Court must first decide if the activity—distributing informational materials—falls under the umbrella of First Amendment protection, and, if so, in what capacity.

Essentially the parties disagree on whether distributing informational materials to state employees and officials constitutes core political speech, which calls for strict scrutiny, or campaign speech, which calls for a lesser standard requiring the law to be closely drawn to a sufficiently important government interest. *Cf.* Motion at 11, *with* Response at 11–12.

Defendants point to persuasive authority out of the Fourth and Sixth Circuits in support of their assertion that Rule 5 restricts nothing more than campaign speech. In *Preston v. Leake*, the Fourth Circuit upheld a ban on lobbyist contributions—including gifts—stating that a lobbyist's role is "prone to corruption," so even a gift "calls into question the propriety of the relationship" between the lobbyist and the public official. 660 F.3d 726, 737 (4th Cir. 2011).

In *Shickel v. Dilger*, the Sixth Circuit also upheld a total ban on gift giving by lobbyists, stating that "[r]estrictions on gift giving, like those on contributions, are marginal restrictions that do not in any way hinder lobbyists' or legislators' ability to discuss

candidates or issues." 925 F.3d 858, 869 (6th Cir. 2019) (citing *Buckley v. Valeo*, 424 U.S.

1, 20–21 (1976)). 21). In both cases, however, Plaintiff correctly asserts that the statutes at

issue contained express exemptions for informational materials to government officials.

*See* Reply at 6 (citing KY. REV. STAT. ANN. 6.611(b)(6) – (7), N.C. GEN. STAT. 163A-

212(f) (2)).

The Court agrees and finds the relationship between the distribution of

informational materials to public officials and what is traditionally understood to be

"campaign speech" simply too attenuated. *See Indep. Inst. v. Williams*, 812 F.3d 787, 796

(10th Cir. 2016) (discussing the difficulties in reliably distinguishing between campaign-

related speech and non-campaign-related speech). Rather this looks more like political

speech. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir. 2006)

("The First Amendment undoubtedly protects . . . speech intended to influence other

political decisions.").

When discussing political contribution limits, the Supreme Court has stated that

such limits are "merely 'marginal' speech restrictions" and "lie closer to the edges than to

the core of political expression." *Fed. Election Comm'n v. Beaumont*, 539 U.S. 146, 161

(2003). But this case involves something much different than financial campaign

contributions. *Bottleneckers*, the book in question, is meant to inform and educate public

officials about a topic of public policy; this is not something that squarely falls under the

typical "campaign speech" categories—such as contribution limits, expenditure caps, and

political funding disclosure requirements. *See, e.g., Ariz. Free Enter. Club's Freedom Club*

*PAC v. Bennett*, 564 U.S. 721, 734–35 (2011).

Moreover, as the Court pointed out in the previous Order denying Defendants' motion to dismiss, bans and limitations on gifts from lobbyists to public officials are "routinely analyzed by the appellate courts as First Amendment challenges." *See* Order [Doc. No. 32], at 12. Oklahoma Ethics Rule 5 prohibits the Institute from distributing a political informational book, which clearly falls under the definition of core political speech and is thus subject to strict scrutiny. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 464 (2007)).

### i.    *Compelling State Interest*

To survive strict scrutiny, the government has the burden of proving that the law or rule in question is "narrowly tailored to serve a compelling state interest." *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008) (citing *Republican Party of Minn. v. White*, 536 U.S. 765, 774–75 (2002)). The first step in a strict scrutiny analysis is determining whether the state has a compelling state interest. Defendants correctly contend that there is a long-recognized important state interest in preventing corruption or the appearance of corruption. *See Citizens United*, 558 U.S. at 359 (discussing the limitation of such interest to "*quid pro quo* corruption") (citing *Buckley*, 424 U.S. at 26–28, 30, 46–48). In fact, Plaintiff does not directly dispute that such an interest is not adequately compelling for the sake of a strict scrutiny analysis.

The Court finds the state has a compelling interest in preventing corruption or the appearance of corruption. *See Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 428 (2000).

ii.     *Tailoring*

Once a compelling state interest has been established, the burden remains with the government to prove that the law or rule in question is narrowly tailored to serve that interest. *Yes on Term Limits*, 550 F.3d at 1028. Accepting that the government has established the required compelling interest, the tailoring of Rule 5 to that interest is far from narrow. Not only is there an inclusivity issue, but there are less-restrictive means available to the state to serve its purported interests.

With the compelling interest of preventing corruption in mind, Ethics Rule 5 seems to impose an arbitrary restriction, in light of other rules in the same regulatory scheme.. For example, although the Ethics Rules prohibit a lobbyist from providing a gift worth more than $10 to a state official or employee, they allow a lobbyist to spend up to $500 on meals with such public officials. *See* Oklahoma Ethics Rules 5.7, 5.10. If, as Defendants contend, the interest at stake is to prevent corruption or the appearance of corruption, it does not logically follow that the latter would be allowed and the former prohibited. There is no principled logic supporting the distinction.

As Plaintiff also points out, the Ethics Rules could be more narrowly tailored to the government's interest so as to avoid any First Amendment issues. Other states' approaches to this issue are instructive. Arizona, for instance, bans gifts of value generally, but also includes an exception for "[i]nformational material such as books, reports, pamphlets, calendars or periodicals." Motion at 14, n.4 (quoting ARIZ. REV. STAT. ANN. § 41-1231). Additionally, North Carolina's gift-banning rule excepts gifs of "'informational materials relevant to the duties of the covered person or legislative employee.'" *Id.* (quoting N.C.

GEN. STAT. ANN. § 163A-212). Numerous other states include similar exceptions as well. *See, e.g.,* KY. REV. STAT. ANN. § 6.611 (defining gifts as "anything of value," but excepting things like proper campaign contributions and "[i]nformational items."); WASH. REV. CODE. ANN. § 42.52.150 (providing an exception to gift limits for "[i]nformational material, publications, or subscriptions related to the recipient's performance of official duties.").

The Court sees no persuasive reason why the rule in question cannot be tailored in this way in order to comply with the freedoms protected by the First Amendment. For these reasons, there is a sufficient likelihood that Plaintiff will prevail on the merits in this case and the first prong for injunctive relief is satisfied.

   b. *In the absence of a preliminary injunction, Plaintiff would suffer irreparable harm.*

The second factor in this case is relatively straightforward in this context. Plaintiff bears the burden of showing that without a preliminary injunction, it will suffer irreparable harm before a full adjudication on the merits. *Winter*, 555 U.S. at 20. For the same reasons presented in the standing analysis, *see* Order Denying Defendants' Motion to Dismiss [Doc. No. 32], the Court disagrees with Defendants' argument that Plaintiff faces no injury in this case. But the question here is not only whether Plaintiff faces a concrete and imminent injury, but whether such an injury will be irreparable absent an injunction.

Defendants contend that the Institute has not met its burden based on two grounds: (1) there are ample alternative channels through which the Institute can put its book in the hands of state officers and employees, and (2) the Institute is not bound by its set price of

$15 for the book and can therefore lower the price within the $10 limit imposed by the Oklahoma Ethics Rules. *See* Response at 18–19.

The Court is not persuaded by these arguments. Regardless of whether ample alternative channels exist, in the preliminary injunction context, both the Tenth Circuit and the Supreme Court have consistently held that deprivation of a constitutional right constitutes irreparable harm at this stage. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) ("[W]hen an alleged constitutional right is *involved*, most courts hold that *no further showing* of irreparable injury is necessary") (emphasis added); *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 805 (10th Cir. 2019) (holding that "[a]ny deprivation of any constitutional right" constitutes irreparable injury).

In other words, "[w]here a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed." *Evergreen Ass'n, Inc. v. City of N.Y.*, 740 F.3d 233, 246 (2d Cir. 2014) (citation omitted). Even when closely scrutinized under the heightened standard of *O Centro*, a case involving a fundamental right such as free speech passes muster under this prong. Because what is at stake in this case is the potential infringement of a constitutional right inasmuch as Rule 5 limits the Institute's protected speech, Plaintiff has satisfied its burden of showing that it will suffer irreparable harm absent a preliminary injunction.

*c.  The balance of equities weighs in favor of the Institute.*

The third prong requires Plaintiff to prove that the balance of equities tips in its favor. *Republican Party of N.M.*, 741 F.3d at 1092 (citing *Winter*, 555 U.S. at 20). To support its argument, Plaintiff simply asserts that political speech is an "essential mechanism of democracy." Motion at 21 (quoting *Citizens United*, 558 U.S. at 339).

Defendants counter by claiming the balance of equities does not tip in Plaintiff's favor because the Institute will not suffer irreparable harm if its motion is denied. Response at 19–20. In light of the discussion in Section II.B, *supra*, however, Plaintiff would in fact suffer irreparable harm absent a preliminary injunction. Alternatively, Defendants assert that the Institute's inability to distribute its book is self-imposed, and thus can be remedied by its own action. *Id.* at 20. More specifically, Defendants claim that the Institute has the ability to set the price of its book below $10, putting it within the bounds of Ethics Rule 5. *Id.* This argument fails to consider, however, that Plaintiff apparently has no direct control over *Bottleneckers*' marketed price. Response to Motion to Dismiss [Doc. No. 22] at 22.

*d.  A preliminary injunction is in the public interest in this case.*

Similar to the second prong of irreparable harm, the fourth prong is relatively simple in the First Amendment context. As the Tenth Circuit has stated, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo*, 820 F.3d at 1127 (quoting *Awad*, 670 F.3d at 1132); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005) ("Vindicating First Amendment freedoms is clearly in the public interest.").

12

Defendants are concerned that removing the restriction of providing informational materials with a preliminary injunction could lead to "gifts of unlimited value" in the meantime. Response at 21. The Court believes these fears are unwarranted. This case is specific to Rule 5's effect on Plaintiff *as applied* and its ability to distribute an informational book worth $15—an activity that falls under the protection of the First Amendment. Thus, a preliminary injunction is in the public interest in this case.

## CONCLUSION

As detailed herein, Plaintiff has met its burden of proving that a preliminary injunction is appropriate in this case.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Preliminary Injunction [Doc. No. 4] is **GRANTED**. Defendants are hereby preliminarily enjoined from enforcing Oklahoma Ethics Rule 5 insofar as it restricts persons from providing a state legislative or executive officer or employee with *Bottleneckers*. This injunction applies to Defendants and their agents and employees and those otherwise acting on behalf of Defendants. This injunction shall remain in full force and effect until this action can be determined on the merits or until further order of the Court.

**IT IS SO ORDERED** this 16th day of July, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge