IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| INTITUTE FOR JUSTICE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHARLIE LASTER, Acting Chairperson ) <br> of the Oklahoma Ethics Commission *et al.*, ) <br> ) <br> Defendants. ) | Case No. CIV-19-858-D |

## ORDER

Before the Court is Plaintiff Institute for Justice's Motion for Award of Attorneys' Fees and Non-Taxable Expenses [Doc. No. 64]. Defendants timely responded [Doc. No. 72], and Plaintiff replied [Doc. No. 73]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff, Institute for Justice, is a nonprofit, public interest law firm that engages in public advocacy, litigation, and strategic research. Its goal is to engage state and federal government officers and employees on issues involving licensing laws, occupational restrictions, and the influence of special interest groups. To achieve this goal, Plaintiff sought to distribute a book, *Bottleneckers: Gaming the Government for Power and Private Profit*, to officers and employees of the legislative and executive branches of the State of Oklahoma. The book ordinarily retailed for $15.00.

Plaintiff requested an advisory opinion from the Oklahoma Ethics Commission ("OEC") to determine the legality of distributing the book. The OEC issued an advisory

opinion which provided that Oklahoma Ethics Rule 5 prohibited gifting a book to a state officer or employee if its market value is greater than $10.00.

In response to the OEC's advisory opinion, Plaintiff filed a complaint in an action styled *Institute for Justice v. Hawkins, et al.*, No. CIV-18-934-D, on September 24, 2018. Alleging that Oklahoma Ethics Rule 5 violated its rights under the First and Fourteenth Amendments to the United States Constitution, Plaintiff sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, an award of attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988, and other legal and equitable relief. The next day, Plaintiff moved for a preliminary injunction to enjoin the defendants[1] from prohibiting Plaintiff from distributing the book via enforcement of Oklahoma Ethics Rule 5.

The defendants subsequently moved to dismiss the initial complaint and filed a response opposing Plaintiff's motion for a preliminary injunction. In both their motion and response, the defendants argued that Plaintiff lacked both constitutional and prudential standing. The Court agreed and denied Plaintiff's motion for a preliminary injunction and dismissed Plaintiff's initial complaint pursuant to Fed. R. Civ. P. 12(b)(1). *See Hawkins*, No. CIV-18-934-D, 8/9/19 Order [Doc. No. 39].[2]

---

[1] In both *Hawkins* and the present action, Plaintiff named OEC's commissioners as individual defendants. However, between the time that *Hawkins* and the present action were initiated, some commissioners were replaced. Thus, the defendants named in *Hawkins* and the present action are not identical.

[2] At the time the Institute filed its complaint, it was neither registered as a "lobbyist" nor a "lobbyist principal." Because the challenged ethics rules only applied to "lobbyists" and "lobbyist principals," the Court concluded that Plaintiff lacked standing and dismissed the action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Plaintiff filed a new complaint six weeks later in an action styled *Institute for Justice v. Laster*, No. CIV-19-858-D. On the same day it filed its complaint, Plaintiff filed a motion for a preliminary injunction requesting the same relief sought in *Hawkins*. The parties agree that Plaintiff's complaint and motion for a preliminary injunction were "nearly identical" to the complaint and motion for a preliminary injunction filed by Plaintiff in *Hawkins*. *See* Pl.'s Mot. at 5; Defs.' Resp. at 3.

On July 16, 2020, the Court preliminarily enjoined Defendants "from enforcing Oklahoma Ethics Rule 5 insofar as it restricts persons from providing a state legislative or executive officer or employee with *Bottleneckers*." 7/16/20 Order [Doc. No. 46] at 13. Thereafter, the OEC promulgated amendments to Oklahoma Ethics Rules 5.8, 5.11, and 5.13. The revisions permit the distribution of *Bottleneckers* and, more broadly, permit legislative liaisons and lobbyists to provide books and other informational materials of any value to state legislative and executive officers and employees, to the extent such materials are related to the recipient's responsibilities as an officer or employee of the State of Oklahoma. These amendments took effect on May 27, 2021.[3] Now, Plaintiff seeks attorneys' fees in the amount of $104,307.50.

## DISCUSSION

In a § 1983 action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C.

---

[3] Although Defendants argue that, as a result of these amended ethics rules, the Court must dismiss this case with prejudice because Plaintiff's claims are moot, it is well-settled that "a claim for attorneys' fees remains viable even after the underlying action becomes moot." *See, e.g., Schell v. OXY USA, Inc.*, 814 F.3d 1107, 1124 n.11 (10th Cir. 2016).

§ 1988(b). For any fee request under § 1988(b), a claimant must prove: "(1) that the claimant was the 'prevailing party' in the proceeding; and (2) that the claimant's fee request is 'reasonable.'" *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge, but the judge's discretion is not unlimited." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010). Although the Court is vested with discretion, such discretion is "narrow once the plaintiff meets the 'prevailing party' inquiry." *Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997).

### I. Plaintiff is the prevailing party.

A plaintiff "prevails" for purposes of 42 U.S.C. § 1988(b) "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). "A preliminary injunction provides relief on the merits when it (a) affords relief sought in the plaintiff's complaint and (b) represents an unambiguous indication of probable success on the merits." *Kan. Judicial Watch v. Stout*, 653 F.3d 1230, 1238 (10th Cir. 2011).

In the present action, Plaintiff sought relief in the form of enjoining Defendants from enforcing Oklahoma Ethics Rule 5. *See* Compl. [Doc. No. 1] at ¶ C; Pl.'s Mot. for Prelim. Inj. [Doc. No. 4] at 4. The Court granted Plaintiff's Motion for a Preliminary Injunction after concluding, *inter alia*, that "there is a sufficient likelihood that Plaintiff will prevail on the merits in this case." 7/16/20 Order at 10. The Court's Order preliminarily enjoined

4

Defendants "from enforcing Oklahoma Ethics Rule 5 insofar as it restricts persons from providing a state legislative or executive officer or employee with *Bottleneckers*." *Id.* at 13.

Thus, the preliminary injunction afforded the relief sought by Plaintiff and represented an unambiguous indication of probable success on the merits. Accordingly, Plaintiff is the "prevailing party" in the present action.

## II. The reasonableness of the requested attorneys' fees

As explained by the Supreme Court, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The party seeking an award of fees has the burden of proving both the number of hours spent and reasonableness of the hourly rates. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000). Once this burden is met, a claimant is entitled to the presumption that this lodestar reflects a "reasonable" fee. *Robinson*, 160 F.3d at 1281.

After determining the lodestar, the Court must then determine whether any upward or downward adjustments should be made to the lodestar "to account for the particularities of the suit and its outcome." *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (citation omitted). In assessing whether adjustments should be made, courts often consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, which include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) preclusion of other employment; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the

undesirability of the case; (11) the nature and relationship of the professional relationship with the client; and (12) awards in similar cases.

488 F.2d 714, 717-19 (5th Cir. 1974). The Tenth Circuit has approved these factors for determining reasonableness. *Brown v. Phillips Petro. Co.*, 838 F.2d 451 (10th Cir. 1988). Although these factors may be considered, the Court does not need to consider the factors "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9. The lodestar calculation is meant to be the primary consideration when awarding fees rather than the *Johnson* factors. *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1103 (10th Cir. 2010) (citing *Perdue*, 559 U.S. at 542).

  **a. The number of hours expended on the litigation**

Plaintiff has submitted time records supporting its request for $104,307.50 in attorneys' fees for the work performed by attorneys at Davis Polk and GableGotwals. Plaintiff seeks to recover fees and expenses associated with the work performed by counsel in both *Hawkins* and *Laster*. Although it acknowledges that it was not the "prevailing party" in *Hawkins*, it argues that "the complaint and preliminary injunction motion filed [in *Hawkins*] were 'nearly identical' to the ones filed [in *Laster*], which necessarily implies that the work relating to those [filings in *Hawkins*] was directly used in, and contributed to the victory in, this action." Pl.'s Reply at 3.

Although conceding that both the complaint and motion for a preliminary injunction filed in *Laster* were "nearly identical" to those filed in *Hawkins*, Defendants maintain that Plaintiff is only entitled to recover legal fees incurred *after* it filed its complaint in *Laster*

6

on September 16, 2019. It argues that Plaintiff is not entitled to any fees incurred during the pendency of *Hawkins*.

Plaintiff concedes that it "is willing to forgo seeking compensation for any work on the standing issue in [*Hawkins*]."[4] Pl.'s Reply at 9. Accordingly, its revised fee request excludes the time dedicated to addressing the motion to dismiss filed in *Hawkins*. *Compare* Pl.'s Mot. at 1 (requesting attorneys' fees for $128,105) *with* Pl.'s Reply at 10 (requesting attorneys' fees in the total revised amount of $104,307.50). However, Plaintiff maintains that it is entitled to compensation for its work in *Hawkins* to the extent such work allowed it to successfully litigate its claim in *Laster*.

The Court agrees with Plaintiff's position. Although the Supreme Court has recognized that "it is difficult to treat time spent years before the complaint was filed as having been 'expended on the litigation,'" it has also acknowledged that "some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.'" *Webb v. Bd. of Educ. of Dyer Cty, Tenn.*, 471 U.S. 234, 242-43 (1985). The "[m]ost obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case." *Id.* at 243.

It appears that the work conducted in *Hawkins* allowed Plaintiff's counsel to proceed with certain efficiencies and develop a theory of the case that eventually led to a

---

[4] As noted, *Hawkins* was dismissed after the Court concluded that Plaintiff lacked both constitutional and prudential standing.

favorable result in *Laster*.[5] Based on Plaintiff's submissions, it does not appear that any work performed in *Hawkins* was significantly duplicated in *Laster*. Thus, because the work performed in *Hawkins* would have otherwise been performed in *Laster*, Plaintiff is entitled to recover its attorneys' fees for the work performed in *Hawkins* to the extent it allowed Plaintiff to successfully litigate the present action.

Forgoing any compensation for its work related to the standing issue in *Hawkins*, Plaintiff seeks attorneys' fees for 323.9 cumulative hours worked. In support of its request, Plaintiff submits time records for Davis Polk attorneys Arthur Burke, Adam Mehes, Danielle Hustus, and Timothy Horley, as well as Adam Doverspike of GableGotwals, who served as local counsel. These records reflect that the lead attorney in the matter, Mr. Burke, spent 6.5 hours litigating the case, while Mr. Mehes—whom Mr. Burke primarily delegated work to—spent 169.4 hours on the case. Associates Ms. Hustus and Mr. Horley spent 69.2 and 67.6 hours, respectively, on the matter. Finally, Mr. Doverspike spent 11.2 hours on the case.

Of the 323.9 hours Plaintiff seeks compensation for, Defendants take issue with 67.7.[6] In addition to these specific objections, Defendants generally argue that Plaintiff's

---

[5] Indeed, the parties agree that Plaintiff's complaint and motion for a preliminary injunction in *Laster* were "nearly identical" to the complaint and motion for a preliminary injunction filed by Plaintiff in *Hawkins*. *See* Pl.'s Mot. at 5; Defs.' Resp. at 3.

[6] As discussed, Plaintiff, in its reply, clarified that it no longer seeks compensation for several of the tasks that Defendant disputed in its response. Even so, numerous time entries remain in dispute, including (1) 29.3 hours preparing a reply brief to Defendants' opposition to Plaintiff's preliminary injunction motion in *Hawkins*; (2) 7.2 hours preparing a notice of supplemental authority to support the preliminary injunction motion in *Hawkins*; (3) 4.5 hours spent conducting research on First Amendment issues; (4) 3.8 hours spent on "procedural tasks" such as reviewing court rules and deadlines and seeking

"fee narratives exhibit other deficiencies that render its fee request unreasonable." Defs.' Resp. at 18. It claims that these deficiencies consist of "excessive time spent on certain tasks, duplication of effort, a top-heavy division of labor, and block-billed entries that make it impossible to discern the time allocated to particular tasks." *Id.*

The Court has examined counsels' fee statements for duplication of services, excessive time billing for particular tasks, unnecessary performance of clerical tasks by lawyers, and other work deemed unnecessary or irrelevant. Upon review, the Court concludes that minimal reduction is required. Specifically, the Court finds that the time spent reviewing local court rules, seeking extensions of time, ensuring compliance with relevant deadlines, and summarizing court orders and filings should not be compensated. Additionally, any time spent researching preliminary injunction-related issues after the preliminary junction order was entered is not compensable. Finally, time spent internally communicating and corresponding surrounding deadlines and filings, as well as reviewing the Court's decision to dismiss the action in *Hawkins* is not compensable. Accordingly, the Court will reduce Adam Mehes' hours by 7.2, Tim Horley's hours by 12.1, Danielle Hustus' hours by 3.2, and Adam Doverspike's hours by 2.8.

b.  **The hourly rates**

In setting the hourly rate, "[t]he court should establish, from the information provided to it and from its own analysis of the level of performance and skill of each lawyer

---

extensions of time; (5) 3.8 hours spent preparing summaries of orders and filings; (6) 10.2 hours spent on unspecified preliminary injunction-related research; (7) 1.7 hours preparing for discovery; and (8) 7.2 hours spent on efforts to protect Plaintiff's ability to seek attorneys' fees. *See* Defs.' Resp. at 16-18.

9

whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits, calculated as of the time the court awards fees." *Sussman v. Patterson*, 108 F.3d 1206, 1211 (10th Cir. 1997) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)). A reasonable hourly rate comports with rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

Plaintiff requests compensation at the following hourly rates for the attorneys that worked on the matter: Arthur Burke ($475); Tim Horley ($250); Danielle Hustus ($250); Adam Mehes ($375); and Adam Doverspike ($285-$335).[7] Detailed declarations were submitted outlining the respective attorneys' experience, skill, and customary rates for services. *See* Decl. of Adam Mehes [Doc. No. 65]; Decl. of Adam Doverspike [Doc. No. 66]. Defendants take issue with the requested rates. It asks the Court to reduce Mr. Horley's and Ms. Hustus' rates to $200/hour, Mr. Mehes' and Mr. Doverspikes' rates to $285/hour, and Mr. Burke's rate to $375/hour.

In support of its claim that the "requested rates are excessive in this market," Defendants point to four attorneys' fees cases from this district. *See* Defs.' Resp. at 14 (citing *Christ Ctr. of Divine Philosophy, Inc. v. Elam*, No. CIV-16-65-D, 2017 WL 4204029 (W.D. Okla. Sept. 21, 2017); *Hartford Life & Accident Ins. Co. v. Jones-Atchison*, No. CIV-17-654-D, 2018 WL 1750741 (W.D. Okla. Apr. 11, 2018); *United States ex rel.*

---

[7] Mr. Doverspike billed $285/hour in 2018, $300/hour in 2019, and $335/hour in 2020.

*Pittman v. LXE Counseling, LLC*, No. CIV-13-1129-R, 2017 WL 486947 (W.D. Okla. Feb. 6, 2017); *Thomas v. Crush Enters., Inc.*, No. CIV-16-773-W, 2017 WL 10379251 (W.D. Okla. Nov. 14, 2017)). However, the Court is not persuaded by Defendants' cited case law, as each case is distinguishable from the present set of circumstances.

For instance, in *Elam*, this Court approved the prevailing party's fee request after the opposing party failed to respond or otherwise oppose the request. In fact, the defendant in *Elam* failed, at any point, to defend the action, and the Court approved the requested hourly rates, ranging from $200 to $275, in what it identified as a "straightforward case of copyright infringement." *Elam*, 2017 WL 4204029, at *4. In *Jones-Atchison*, the fee request was similarly unopposed, and the Court—after considering counsel's respective experience, skill, and customary rates—approved hourly rates of $305 and $200.[8] *Jones-Atchison*, 2018 WL 1750741, at *2-3. The Court is unable to conclude that these unopposed attorneys' fees requests, in two cases that involved relatively straightforward issues of fact and law, support Defendants' position that the requested rates are excessive in this market.

Defendants do identify two cases—*LXE Counseling, LLC* and *Thomas*—in which courts in this district *reduced* the requested hourly rates. However, Defendants' attempt to analogize each case to the fee request at issue here is misguided. In *LXE Counseling*, the

---

[8] The attorney for which the Court approved the $300/hour rate was a shareholder with approximately ten years of experience at the time the motion for attorneys' fees was filed, while the $200/hour attorney was an associate with approximately four years of experience. At the time the instant motion was filed, Mr. Doverspike had approximately twelve years of experience, Mr. Mehes eleven, Ms. Hustus five, and Mr. Horley three. *See* Declaration of Adam G. Mehes [Doc. No. 65]; Declaration of Adam C. Doverspike [Doc. No. 66].

court reduced the requested $600/hour rate to $200/hour due to counsel's failure "to abide by [the court's] Order directing [counsel] to provide an affidavit with his usual hourly rate" or otherwise "provide any other information justifying why a rate of $600/hour is reasonable." 2017 WL 486947, at *1. In *Thomas*, the court similarly reduced the hourly rates requested for associates from $285/hour to $150/hour due to "the absence of any evidence regarding [the associates'] education, reputation or experience." 2017 WL 10379251, at *5.

Thus, in both *LXE Counseling, LLC* and *Thomas*, counsel failed to provide any information justifying the requested hourly rates. Here, counsel has submitted extensive documentation detailing the respective attorneys' experience, skill, and customary rates for services. Upon review, the Court finds that Plaintiff has presented sufficient evidence that the requested rates are in line with the prevailing market rates for lawyers of comparable skill and experience practicing in the Oklahoma City area (i.e., Western District of Oklahoma). *See Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1130-D, 2018 WL 5269828, at *2 (W.D. Okla. Oct. 23, 2018) (approving hourly rates of $350/hour and $400/hour in a suit involving FLSA issues); *see also Catholic Benefits Ass'n LCA v. Azar*, No. 14-240-R, 2018 WL 3876616, at *12 (W.D. Okla. Aug. 15, 2018) (employing a hybrid approach to reflect customary local rates and the national scope of the work to award attorneys' fees under § 1988 in the following amounts: $250-$270 for associates, and $360-$470 for partners).

### c. The lodestar amount and *Johnson* factors

After reducing the number of hours spent on the litigation in the manner described above, and multiplying those hours by the hourly rates requested by Plaintiff, the Court calculates the lodestar as $96,939.00. Under the circumstances of this case, no adjustment to the lodestar is necessary. The following *Johnson* factors were subsumed by the lodestar calculation: (1) time and labor required; (2) novelty and difficulty of questions presented; (3) skills requisite to perform the legal service properly; (5) customary fee; (6) whether the fee is fixed or contingent; (9) experience, reputation, and ability of the attorneys. The remaining *Johnson* factors are not applicable and thus, neutral, including: (4) preclusion of other employment; (7) time limitations imposed; (8) amount involved and results obtained; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

## CONCLUSION

The hourly rates charged by counsel in this matter are reasonable under the circumstances here, and the number of hours spent on the litigation have been appropriately reduced. Additionally, no adjustment to the lodestar is necessary. Accordingly, Plaintiff's Motion for Award of Attorneys' Fees and Non-Taxable Expenses [Doc. No. 64] is **GRANTED** as set forth herein. Plaintiff is awarded attorneys' fees in the amount of $96,939.00.

**IT IS SO ORDERED** this 23rd day of December, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge